# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JANET NORTHRUP, as Chapter 7 Trustee for the Estate of Mountain Express Company and affiliated debtors, | |
| *Plaintiff*, | Civil Action No. 1:25-cv-01404-MLB |
| v. | |
| TURJO WADUD, et al., | |
| *Defendants*. | |

## DEFENDANTS MEHBOOB ALI HUSAIN, ARASH INVESTMENTS, INC., AND BANO ENTERPRISES, INC.'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ........................................................................................1

FACTUAL ALLEGATIONS .........................................................................3

I.      Husain Defendants. ...........................................................................3

II.     Challenged Transfers. ........................................................................3

        A.      LBO Bonus .............................................................................3

        B.      Improper Shareholder Payment ............................................4

        C.      Husain Fee Transfers. ............................................................4

        D.      Husain Redemption Transfers. ..............................................5

        E.      MEX's Bankruptcy and Ensuing Litigation. ........................7

LEGAL STANDARD ..................................................................................8

ARGUMENT AND CITATION TO AUTHORITY ....................................9

I.      Most of the Trustee's claims against the Husain Defendants
        are time barred. ..................................................................................9

        A.      Almost all of the Trustee's fiduciary duty claim against
                Husain is barred by the statute of limitations. .....................9

        B.      Most of the Trustee's fraudulent transfer claims are
                time barred. ...........................................................................11

II.     The Trustee has failed to adequately plead her claims against
        the Husain Defendants. ....................................................................12

        A.      The Trustee has failed to plead facts to support part of
                her fiduciary duty claim. .....................................................12

        B.      The fraudulent transfer claims are not sufficiently pled. ....14

i

      1.      The Trustee has failed to allege reasonably equivalent value and insolvency in her constructive fraudulent transfer claims under O.C.G.A. § 18-2-75(a) and O.C.G.A. § 18-2-74(a)(2). ....................................................15

             a.      The Trustee did not allege reasonably equivalent value. ..............................................................16

             b.      The Trustee failed to allege facts as to MEX's solvency at the time of the Improper Shareholder Payment, Husain Fee Transfers, and Husain Redemption Transfers. ..................................................19

      2.      The Trustee has failed to allege fraudulent transfer under O.C.G.A. § 18-2-74(a)(1). ......................................................21

III.    The Trustee's claims for recovery and preservation of transfer should be dismissed because they are dependent on the Trustee's insufficiently pled fraudulent transfer claims. .............................................................24

CONCLUSION ..................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Agricommodities, Inc. v. Moore*,
359 Ga. App. 1 (2021) .........................................................................17

*Alliant Tax Credit Fund 31-A, Ltd. v. Murphy*,
No. 1:11-CV-00832-RWS, 2011 WL 3156339 (N.D. Ga. July 26, 2011)...........9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .........................................................................14

*F.D.I.C. ex rel. Cmty. Bank & Tr. Cornelia, Ga. v. Miller*,
No. 2:12-CV-42-WCO, 2012 WL 9494095 (N.D. Ga. Dec. 26, 2012) ..............14

*Fin. Sec. Assur., Inc. v. Stephens, Inc.*,
500 F.3d 1276, 1282 (11th Cir. 2007).................................................8

*Godwin v. Mizpah Farms, LLLP*,
330 Ga. App. 31 (2014) ...................................................................11

*Hill for Credit Nation Cap., LLC v. Duscio*,
292 F. Supp. 3d 1370 (N.D. Ga. 2018)..............................................16

*In re ATM Fin. Servs., LLC*,
No. 6:08-bk-969-KSJ, 2011 WL 2604247
(Bankr. M.D. Fla. June 21, 2011) ......................................................18

*In re Beaulieu Grp., LLC*,
No. 17-41677-BEM, 2021 WL 4469928
(Bankr. N.D. Ga. Sept. 29, 2021) ................................................24, 27

*In re Fundamental Long Term Care, Inc.*,
873 F.3d 1325 (11th Cir. 2017)..............................................18, 20, 22

*In re Glob. Link Telecom Corp.*,
327 B.R. 711 (Bankr. D. Del. 2005)..........................................23, 27

*In re Maxus Energy Corp.*,
  641 B.R. 467 (Bankr. D. Del. 2022) .......................................................................13

*In re Medici*,
  524 B.R. 902 (Bankr. N.D. Ga. 2014) ...................................................................25

*In re Menser*,
  No. 18-65681-JWC, 2021 WL 4484894
  (Bankr. N.D. Ga. Sept. 30, 2021) ...........................................................18, 19, 22

*In re Northlake Foods, Inc.*,
  715 F.3d 1251 (11th Cir. 2013).......................................................................20, 21

*In re Pac One, Inc.*,
  No. 01-85027 MGD, 2007 WL 2083817 (N.D. Ga. July 17, 2007)....................11

*In re Palm Beach Fin. Partners, L.P.*,
  No. 09-36379-BKC-PGH, 2013 WL 12478838
  (Bankr. S.D. Fla. July 30, 2013).........................................................................23

*In re Rodriguez*,
  895 F.2d 725 (11th Cir. 1990)..............................................................................20

*In re S. Home & Ranch Supply, Inc.*,
  No. ADV 13-1043, 2013 WL 7393247
  (Bankr. N.D. Ga. Dec. 20, 2013) ..............................................................9, 17, 24

*In re Tanner*,
  No. 22-53852-WLH, 2023 WL 6884714
  (Bankr. N.D. Ga. Oct. 18, 2023)..........................................................................28

*In re Think Retail Sols., LLC*,
  No. 15-56153-BEM, 2019 WL 2912717 (Bankr. N.D. Ga. July 5, 2019)...........12

*Johnson v. City of Atlanta*,
  107 F.4th 1292 (11th Cir. 2024)...........................................................................20

*Kipperman v. Onex Corp.*,
  411 B.R. 805 (N.D. Ga. 2009)..............................................................................26

*Leon Jones Feed & Grain, Inc. v. Gen. Bus. Servs., Inc.*,
    175 Ga. App. 569 (1985) ........................................................................10

*Next Century Commc'ns Corp. v. Ellis*,
    171 F. Supp. 2d 1374 (N.D. Ga. 2001)...............................................8

*Niloy & Rohan, LLC v. Sechler*,
    335 Ga. App. 507 (2016) ....................................................................10

**Statutes**

O.C.G.A. § 14-2-831 ......................................................................9, 10

O.C.G.A. § 18-2-70 ............................................................................14

O.C.G.A. § 18-2-71 ............................................................................12

O.C.G.A. § 18-2-74 ..................................................................... passim

O.C.G.A. § 18-2-75 ..................................................................8, 11, 15

O.C.G.A. § 18-2-79 ............................................................................11

**Rules**

Fed. R. Civ. P. 9 ..................................................................................8

Fed. R. Civ. P. 12 ................................................................................8

Defendants Mehboob Ali Husain, Arash Investments, Inc., and Bano Enterprises, Inc. (the "Husain Defendants") file this Memorandum in Support of their Motion to Dismiss. For the reasons set forth below, the Court should dismiss the claims against the Husain Defendants.

## INTRODUCTION

This case arises from the bankruptcy of Mountain Express Oil Company ("MEX"). Mehboob Ali Husain ("Husain") became the Chief Operating Officer of MEX in 2015 and held that role for about four years. In November 2019, Husain resigned. From that point on, Husain had no role in MEX.

Four years later, MEX declared bankruptcy. Now, the Trustee seeks to recover payments that MEX made to various parties. Despite Husain's lack of involvement in MEX for the past 6 years and scant factual allegations about him, the Trustee seeks to recover certain payments made to Husain and his companies, Arash Investments, Inc. ("Arash") and Bano Enterprises, Inc. ("Bano"). The Husain Defendants deny any wrongdoing with respect to the transfers, which is made clear in part by the Trustee's inability to allege the facts necessary to plead fraudulent transfer claims despite the benefit of eighteen months of discovery (including a Rule 2004 examination of Hussain) in the ongoing bankruptcy proceedings. But even at this early stage of litigation, the claims against the Husain Defendants fail for two primary reasons.

***First***, most of the claims against the Husain Defendants are barred by statutes of limitations. The statute of limitations for the Trustee's breach-of-fiduciary-duty claim is four years, and most of the conduct that forms the basis for that claim against Husain occurred more than four years prior to the bankruptcy petition date. Similarly, the statute of limitations for the fraudulent-transfer claims is four years, and most of the transfers related to the Husain Defendants occurred more than four years before the bankruptcy petition date. As a result, most of the claims against Husain are time barred.

***Second***, the Trustee has failed to plead sufficient facts to support almost all of her claims against the Husain Defendants. The Trustee failed to allege any facts to support the part of the breach-of-fiduciary-duty claim against Husain that is not time barred. With respect to the constructive-fraudulent-transfer claims brought against the Husain Defendants, the Trustee did not plead any specific facts to show that MEX was insolvent at the time of most of the challenged transfers or that MEX did not receive reasonably equivalent value for the transfers. And the Trustee failed to sufficiently allege the badges of fraud needed to show fraudulent intent for her fraudulent transfer claim based on actual fraud. These failures are particularly glaring given the fact that the Trustee has the benefit of already conducting eighteen months' worth of discovery on these transfers, including a

Rule 2004 examination of Husain. Between these two deficiencies with the Complaint, all of the claims against the Husain Defendants should be dismissed.[1]

## FACTUAL ALLEGATIONS

### I. Husain Defendants.

MEX was formed in 2000 as a fuel and lubricant distributor. Dkt. 1 ¶ 83. Husain was the Chief Operating Officer ("COO") of MEX from from 2015 through November 3, 2019. *Id.* ¶¶ 98, 492. Arash and Bano are Husain's wholly owned companies. *See id.* ¶¶ 50–51. During most of the time that Husain was COO of MEX, MEX's business focused on entering fuel supply agreements with major fuel suppliers and then re-selling and distributing the fuel to convenience stores and travel centers ("C-Stores"). *Id.* ¶ 105. Shortly before Husain resigned, MEX expanded its business to operating fuel centers and C-Stores ("Retail Business"). *Id.* ¶¶ 106–07.

### II. Challenged Transfers.

There are four categories of challenged transfers relevant to the Husain Defendants.

#### A. LBO Bonus

In 2018, the Bierenbaums (who owned MEX at the time) initiated a leveraged buyout ("LBO") of their ownership interest in MEX. *Id.* ¶¶ 90–91. In

---

[1]     The bases for dismissal for each claim is detailed in the chart attached as Exhibit A.

connection with the LBO, Husain received a bonus of $2.6 million on October 26, 2018 ("LBO Bonus"). *Id.* ¶ 92. The Trustee alleges that "MEX received no consideration for the LBO Bonuses and could not afford to pay them given that the value of MEX's liabilities exceeded the value of its assets at the time these bonuses were paid." *Id.* The Trustee further alleges that "[a]ny purported obligations to pay the LBO Bonuses were fraudulent in nature as MEX received no consideration, or inadequate consideration, for any purported obligations." *Id.*

## B. Improper Shareholder Payment

In 2020, Husain received $45,920 in distributions from MEX (which the Trustee characterizes as an "Improper Shareholder Payment").[2] *Id.* ¶ 103. This is the extent of the factual allegations about this payment to Husain.

## C. Husain Fee Transfers

The Trustee alleges that Husain, through Arash and Bano, received hundreds of thousands of dollars in "purported" consulting fees in connection to MEX's real estate transactions throughout 2018 and 2019:

> a) On July 31, 2018, MEX paid Bano $100,598.00 from the proceeds of MEX's sale of 14 properties in Georgia;
> b) On November 29, 2018, MEX paid Arash and Bano a total of $112,815.07 from the proceeds of MEX's sale of 8 properties in Arkansas and Louisiana;

---

[2] While the Husain Defendants dispute that this payment was "improper" in any way, they will maintain the naming convention that the Trustee used for ease of reference.

c)     On February 28, 2019, MEX paid Arash and Bano a total of $92,381.44 from the proceeds of MEX's sale of 19 properties in Georgia; and

d)     On September 25, 2019, MEX paid Husain, individually and through Arash and Bano, a total of $107,988.55 in connection with MEX's purchase of 10 properties in Arkansas and Louisiana.

*Id.* ¶¶ 202–03 (collectively, the "Husain Fee Transfers"). The only other factual allegation about the Husain Fee Transfers is that when Husain was questioned about these transfers during his Rule 2004 examination, "he was unable to provide specific details about the basis for these payments and indicated that he did not have, or did not know if he had, documents supporting the reasons for such transfers." *Id.* ¶ 204.

### D.    Husain Redemption Transfers

Husain's 2018 Employment Agreement gave the Biernbaums the right to repurchase Husain's MEX stock for $100,000 upon the termination of his employment. *Id.* ¶ 206. The Trustee alleges that, "[a]ccording to MEX's audited 2018 financial statements, the value of MEX's liabilities exceed the value of its assets by nearly $10.5 million at this time," so MEX's stock was valueless. *Id.* ¶¶ 207–08.

The Biernbaums later assigned their right to repurchase Husain's stock to MEX, and on February 20, 2020, Husain and MEX entered into a Stock

Redemption Agreement (the "Stock Redemption Agreement")[3] in which MEX agreed to redeem and purchase Husain's stock for $1 million ("Husain Redemption Obligation"). *Id.* ¶¶ 209–10. The Stock Redemption Agreement was executed shortly after Husain resigned from MEX. Ex. B at 1 (noting Husain's Employment Agreement was terminated on November 3, 2019). In the Stock Redemption Agreement, MEX agreed to pay Husain $250,000 on March 11, 2020. *Id.* ¶ 2. As of that date, Husain agreed to transfer the stock to MEX, and "all right title and interest in and to the Stock" would "be fully vested in MEX." *Id.* ¶ 4. The remaining $750,000 was conditioned on MEX closing on a loan from IberiaBank, to be paid over a two-year period. *Id.* ¶ 2. The Stock Redemption Agreement contains a release in which MEX and Husain released each other from all claims arising prior to the date of the Stock Redemption Agreement, and Husain agreed to be bound by his post-termination obligations and covenants. *Id.* ¶ 5.

On March 11, 2020, MEX paid Husain $250,000. Dkt. 1 ¶ 214. Then on April 1, 2022, MEX paid Husain $382,500. *Id.* ¶ 215. Finally, on July 1, 2022, MEX paid $383,456 to satisfy the remainder of the Husain Redemption Obligation (collectively, the "Husain Redemption Transfers"). *Id.* ¶ 216.

---

[3]     The Court may consider the Stock Redemption Agreement, which is attached here as Exhibit B, under the incorporation-by-reference doctrine. *See infra* note 9.

The Trustee alleges that "[t]his dramatic increase in valuation [of the shares] . . . was not justified" and that "MEX and Husain did not have independent third parties determine a fair market price" for the shares. *Id.* ¶¶ 211–12. The Trustee also alleges in a conclusory manner that the Husain Redemption Transfers were fraudulent because MEX did not receive reasonably equivalent value and MEX was insolvent at the time. *Id.* ¶ 213.

### E.    MEX's Bankruptcy and Ensuing Litigation

MEX filed for bankruptcy on March 18, 2023 (the "Petition Date"). *Id.* ¶ 1. Bankruptcy proceedings are pending in the United States Bankruptcy Court in the Southern District of Texas. In that proceeding, the Trustee conducted discovery, including at least seven Rule 2004 examinations and three of which were examinations of individual named defendants in this action (Wadud, Frady, and Husain). *See id.* ¶¶ 89, 179, 204, 259, 261, 280, 444. Almost exactly two years later, the Trustee filed this lawsuit against 28 defendants asserting 22 causes of action alleging "a multi-year conspiracy through which the Defendants siphoned tens millions of dollars in funds, properties, and other assets from MEX to themselves, their companies, and their affiliates." *Id.* ¶ 1.

The Trustee brings a claim for breach of fiduciary duties against Husain (Count 8). In addition, the Trustee brings the following claims against the Husain Defendants: avoidable fraudulent transfers pursuant to 11 U.S.C. § 544 and

O.C.G.A. § 18-2-75(a) (Count 9), avoidable transfers pursuant to 11 U.S.C.

§ 544(b) and O.C.G.A. § 18-2-74(a)(1) (Count 10), voidable transfers pursuant to

11 U.S.C. § 544(b) and O.C.G.A. § 18-2-74(a)(2) (Count 11), recovery of transfers

pursuant to 11 U.S.C. § 550 (Count 16), and preservation of avoided transfers

pursuant to 11 U.S.C. § 551 (Count 20).

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal if

the allegations, taken as true, would not entitle the plaintiff to relief. To survive a

12(b)(6) motion, "the factual allegations in a complaint must possess enough heft

to set forth a plausible entitlement to relief." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*,

500 F.3d 1276, 1282 (11th Cir. 2007) (internal quotation marks omitted).

Allegations that are "labels and conclusions," "naked assertion[s]," "[t]hreadbare

recitals of the elements," or "mere conclusory statements" should be ignored.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see

also Next Century Commc'ns Corp. v. Ellis*, 171 F. Supp. 2d 1374, 1378 (N.D. Ga.

2001).

Rule 9(b) requires that the Trustee plead with particularity her claim for

fraudulent transfers under O.C.G.A. § 18-2-74(a)(1) (Count 10). Fed. R. Civ. P.

9(b); *In re S. Home & Ranch Supply, Inc.*, No. ADV 13-1043, 2013 WL 7393247,

at *3 (Bankr. N.D. Ga. Dec. 20, 2013). ("To successfully plead a fraudulent

transfer cause of action under . . . O.C.G.A. section 18-2-74(a)(1), the plaintiff must meet the heightened standards of Rule 9(b) of the Federal Rules of Civil Procedure"). "Rule 9(b) is satisfied for actual fraud claims under the UFTA when a plaintiff submits: (1) an allegation of jurisdiction, (2) a statement of the date and the conditions of the indebtedness involved (often with the document itself attached), (3) the amount owed, (4) a statement that the defendant conveyed real and personal property of a given description to another for the purpose of defrauding [the] plaintiff and hindering and delaying the collection of the indebtedness described prior, and [(5)] a demand for judgment." *Alliant Tax Credit Fund 31-A, Ltd. v. Murphy*, No. 1:11-CV-00832-RWS, 2011 WL 3156339, at *6 (N.D. Ga. July 26, 2011).

## ARGUMENT AND CITATION TO AUTHORITY

I.    **Most of the Trustee's claims against the Husain Defendants are time barred.**

    A.    **Almost all of the Trustee's fiduciary duty claim against Husain is barred by the statute of limitations.**

Most of the Trustee's claim for breach of fiduciary duty against Husain (Count 8) is time barred. The Trustee brings her claim under O.C.G.A. § 14-2-831, which allows derivative actions against directors and officers. O.C.G.A. § 14-2-831(b) states that "[n]o action shall be brought for the relief provided in subsection (a) of this Code section more than four years from the time the cause of action accrued." A claim for breach of fiduciary duty accrues when "a wrongful act [is]

accompanied by any appreciable damage." *Niloy & Rohan, LLC v. Sechler*, 335 Ga. App. 507, 512 (2016) (internal quotation marks omitted). "[A]ppreciable damage" includes "even slight or nominal damage . . . ." *Leon Jones Feed & Grain, Inc. v. Gen. Bus. Servs., Inc.*, 175 Ga. App. 569, 570 (1985). Because "each act of alleged breach of fiduciary duty that causes damage creates a new cause of action for that specific act," the Court must examine each alleged breach to determine the accrual date. *Godwin v. Mizpah Farms, LLLP*, 330 Ga. App. 31, 39 (2014). Claims that are untimely under O.C.G.A. § 14-2-831(b) are properly dismissed. *In re Pac One, Inc.*, No. 01-85027 MGD, 2007 WL 2083817, at *7 (N.D. Ga. July 17, 2007) (dismissing breach-of-fiduciary-duty claim because underlying conduct occurred more than four years prior to filing of suit).

The Petition Date is March 18, 2023, so any conduct that occurred before March 18, 2019 is time barred. O.C.G.A. § 14-2-831(b). The Trustee alleges that Husain breached his fiduciary duties (1) by failing to implement and maintain internal controls for C-Stores and the Retail business during his time as COO; (2) in connection with the LBO; (3) by receiving the LBO Bonus; and (4) engaging in the transactions that resulted in the Husain Fee Transfers, and that these alleged breaches damaged MEX. Dkt. 1 ¶¶ 505, 515. Almost all of the conduct underlying this claim occurred prior to March 2019. *See id.* ¶ 492 (Husain was COO from 2015 to November 2019); ¶ 90 (LBO and LBO Bonus occurred in 2018); ¶ 203

(alleged conflicted and self-interested transaction with MEX on behalf of Arash and Bano occurred in 2018 and 2019).[4] Because the Trustee's claim accrued at the time of the alleged breaches described above, almost all of the Trustee's claim against Husain is barred by the statute of limitations and should be dismissed.

**B.    Most of the Trustee's fraudulent transfer claims are time barred.**

Most of the Trustee's fraudulent transfer claims against the Husain Defendants (Counts 9, 10, and 11) are also barred by the statute of limitations. The lookback period for a claim under O.C.G.A. § 18-2-74 or § 18-2-75 begins on the bankruptcy petition date, and the challenged transfer must be made within four years prior to the petition date to be timely. O.C.G.A. § 18-2-79(1)-(2); *In re Think Retail Sols., LLC*, No. 15-56153-BEM, 2019 WL 2912717, at *11 (Bankr. N.D. Ga. July 5, 2019) (explaining that the GUVTA four-year lookback period begins on the bankruptcy petition date).

The Petition Date is March 18, 2023, so any transfer that occurred before March 18, 2019 is time barred.[5] Several of the transfers that form the basis of the

---

[4]    Husain's conduct as COO with respect to the C-Stores and Retail Business from March 2019 to November 2019 and one Husain Fee Transfer that occurred on September 25, 2019 are not time barred. *See* dkt. 1 ¶ 203(d). Nevertheless, the Trustee failed to sufficiently plead facts to support this portion of the claim. *See supra* Section II.A.

[5]    The Trustee alleges that the lookback period for her claim under O.C.G.A. § 18-2-75(a) can be extended through *nullum tempus*, which stands for the proposition that statutes of limitations do not apply to the government, because certain creditors of MEX are government entities. Dkt. 1 ¶¶ 253, 526. But a statute

claims against the Husain Defendants predate March 2019, including the LBO

Bonus, which occurred on October 26, 2018, and most of the Husain Fee Transfers,

which occurred in 2018 and 2019.[6] Dkt. 1 ¶¶ 92, 203. Because these transfers

occurred more than four years before the Petition Date, the claims against the

Husain Defendants based on these transfers are time barred and must be dismissed.

## II.     The Trustee has failed to adequately plead her claims against the Husain Defendants.

### A.     The Trustee has failed to plead facts to support part of her fiduciary duty claim.

The part of Trustee's claim against Husain for breach of fiduciary duty that

is not time barred should be dismissed because the Trustee failed to allege any

facts to support her allegation that Husain failed to establish, implement, and

maintain internal controls for the C-Stores individually and the Retail Business as a

whole or that the Husain Fee Transfers somehow violated Husain's fiduciary

duties. It is black-letter law that a plaintiff must allege "facts to state a claim to

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

of limitations runs against the government when the statute expressly provides so. *In re Maxus Energy Corp.*, 641 B.R. 467, 547 (Bankr. D. Del. 2022). And the Uniform Voidable Transactions Act includes government entities in the definition of a creditor who may bring a claim under the act, meaning that the statute of limitations expressly applies to government entities. *See, e.g.*, O.C.G.A. § 18-2-71(4), (11).

[6] One Husain Fee Transfer occurred on September 25, 2019 and is not time barred. Dkt. 1 ¶ 203(d). Nevertheless, the Trustee has failed to state a claim related to this transfer. *See supra* Section B.

(2007). "Conclusory allegations, without specific facts, are not sufficient to satisfy the pleading requirement." *F.D.I.C. ex rel. Cmty. Bank & Tr. Cornelia, Ga. v. Miller*, No. 2:12-CV-42-WCO, 2012 WL 9494095, at *5 (N.D. Ga. Dec. 26, 2012).

The Trustee alleges that, while serving as MEX's COO, Husain "fail[ed] to use the degree of care an ordinarily prudent person in a like position would exercise under similar circumstances" in part because "he had a duty to establish, implement, and maintain internal controls for the C-Stores individually and the Retail Business as a whole, but failed to do so." Dkt. 1 ¶ 505. That is the extent of the Trustee's allegations about this alleged breach. There are ***no*** specific factual allegations about Husain's involvement with the C-Stores or Retail Business or how he failed to "establish, implement, and maintain internal controls" for the C-Stores and Retail Business. *See generally id.* Instead, all of the factual allegations about Husain relate to the various transfers that the Trustee is challenging. *See id.* ¶ 92 (LBO Bonus); ¶ 103 (Improper Shareholder Payment); ¶¶ 202–17 (Husain Fee Transfers and Husain Redemption Transfers). Because the Trustee failed to allege any specific facts to support her allegation that Husain breached his duty with respect to internal controls for C-Stores and the Retail Business, that portion of the claim against Husain should be dismissed.

Similarly, the Trustee has failed to allege how the Husain Fee Transfers breached Husain's fiduciary duties. There are no factual allegations about the

transfers other than Husain "was unable to provide specific details about the basis" of the payment during his Rule 2004 examination. *Id.* ¶ 204. While the Trustee alleges in a conclusory manner that the transaction was "conflicting and self-interested," *see id.* ¶ 505, she pleads no facts to support that conclusion. As a result, this portion of the claim against Husain should be dismissed as well.

### B.     The fraudulent transfer claims are not sufficiently pled.

Almost all of the Trustee's claims for fraudulent transfers as to the Husain Defendants should be dismissed because the Trustee has failed to plead facts sufficient to support those claims.[7] The Trustee brings avoidance claims under 11 U.S.C. § 544, which allows a trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law . . . ." The "applicable law" here is Georgia's Uniform Voidable Transactions Act ("GUVTA"), O.C.G.A. § 18-2-70 *et seq.*[8]

---

[7]     The Husain Defendants do not seek dismissal of the fraudulent transfer claims as to the LBO Bonus based on a failure to state a claim, but that portion of the claims should be dismissed as untimely. *See infra* Section I.B.

[8]     Georgia replaced the Uniform Fraudulent Transfer Act ("GUFTA") with the GUVTA in 2015. *Hill for Credit Nation Cap., LLC v. Duscio*, 292 F. Supp. 3d 1370, 1376 (N.D. Ga. 2018). As a result, some case law refers to the GUFTA instead of the GUVTA. The two statutes are identical except the word "fraudulent" was replaced with "voidable." *Id.*

1. **The Trustee has failed to allege reasonably equivalent value and insolvency in her constructive fraudulent transfer claims under O.C.G.A. § 18-2-75(a) and O.C.G.A. § 18-2-74(a)(2).**

The Trustee's constructive fraudulent transfer claims should be dismissed as to the Improper Shareholder Payment, Husain Fee Transfers, and Husain Redemption Transfers because the Trustee has failed to adequately allege that MEX did not receive reasonably equivalent value for these transfers or that MEX was insolvent at the time of the transfers. Under O.C.G.A. § 18-2-75(a) (Count 9), "[a] transfer made . . . by a debtor is voidable as to a creditor whose claim arose before the transfer" "if the debtor [(1)] made the transfer . . . without receiving **a reasonably equivalent value** in exchange of the transfer and [(2)] the debtor was **insolvent** at the time of the transfer or . . . became insolvent as a result of the transfer." (emphasis added). Similarly, under O.C.G.A. § 18-2-74(a)(2) (Count 11), a transfer made by a debtor is voidable as to a creditor, regardless of when the creditor's claim arose, if the debtor made the transfer "[w]ithout receiving a **reasonably equivalent value** in exchange for the transfer" and the debtor "[w]as engaged or was about to engage in a business or a transaction for which the **remaining assets of the debtor were unreasonably small** in relation to the business or transaction." (emphasis added).

These claims are both constructive fraud claims. *In re S. Home & Ranch Supply, Inc.*, 2013 WL 7393247, at *4; *Agricommodities, Inc. v. Moore*, 359 Ga.

App. 1, 3 (2021). "It is insufficient to simply allege the statutory elements of a constructive fraud claim." *In re Menser*, No. 18-65681-JWC, 2021 WL 4484894, at *6 (Bankr. N.D. Ga. Sept. 30, 2021). That is exactly what the Trustee did here.

### a. The Trustee did not allege reasonably equivalent value.

The Trustee failed to sufficiently plead facts showing that MEX did not receive reasonably equivalent value for the Improper Shareholder Payment, Husain Fee Transfers, and the Husain Redemption Transfers, despite the benefit of eighteen months of discovery in the bankruptcy proceedings. "To plead a lack of reasonably equivalent value the plaintiff must present some information about the value the debtor received in exchange for the transfer." *In re Menser*, 2021 WL 4484894, at *6 (internal quotations marks omitted). As a result, "to have nudged [her] claims across the line from conceivable to plausible," the Trustee must "offer[ ] more than a bald assertion" that any other consideration that MEX received was less valuable than the amount MEX paid. *In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1344 (11th Cir. 2017) (internal quotation marks omitted); *see also In re ATM Fin. Servs., LLC*, No. 6:08-bk-969-KSJ, 2011 WL 2604247, at *4 (Bankr. M.D. Fla. June 21, 2011) (dismissing constructive fraudulent transfer claims when the complaint "contain[ed] no factual allegations upon which the Court could infer the debtor received 'less than a reasonably equivalent value'" in exchange for the transfer and "merely state[d] in conclusory

fashion that the transfer 'was made for less than reasonably equivalent value'")

(emphasis omitted).

With respect to the Husain Fee Transfers, there are no allegations that the

transfers were made without MEX receiving a reasonably equivalent value in

exchange for the transfer. Instead, the Trustee simply alleges that Husain could not

recall the details surrounding these transfers, which occurred years ago, during his

Rule 2004 examination. Dkt. 1 ¶ 204. Similarly, there are no factual allegations as

to how MEX did not receive a reasonably equivalent value in exchange for the

Improper Shareholder Payment or the Husain Redemption Transfers. *Id.* ¶ 103.

While the Trustee generally alleges that MEX received less than reasonably

equivalent value for these transfers, *id.* ¶ 524, that conclusory allegation is

insufficient to state a claim. *See In re Menser*, 2021 WL 4484894, at *6.

Moreover, the terms of the Stock Redemption Agreement highlight the

Trustee's failure to allege that MEX did not receive reasonably equivalent value for

the Husain Redemption Transfers.[9] In determining whether a plaintiff has plausibly

alleged that a debtor did not receive reasonably equivalent value for a transfer,

"courts make informed judgments as to asset valuation in light of the totality of the

---

[9]     The Court may properly consider the Stock Redemption Agreement, which
is attached as Exhibit B, because it is "(1) central to the plaintiff's claims; and (2)
undisputed, meaning that its authenticity is not challenged." *Johnson v. City of
Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

circumstances." *In re Fundamental Long Term Care, Inc.*, 873 F.3d at 1344. "'Reasonably equivalent value' does not mean dollar-for-dollar equivalence." *Id.* And the law "does not authorize voiding a transfer which confers an economic benefit upon the debtor, either directly or indirectly." *In re Rodriguez*, 895 F.2d 725, 727 (11th Cir. 1990) (internal quotation marks omitted).

For example, in *In re Northlake Foods, Inc.*, a shareholder of Northlake Foods, Inc. ("Northlake") executed an agreement with Northlake in which Northlake agreed that if Northlake's income were to become taxable to the shareholder, Northlake would pay a dividend to the shareholder to pay the tax attributable to Northlake. 715 F.3d 1251, 1253 (11th Cir. 2013). Northlake later designated itself as a S corporation and paid its shareholder a dividend to cover his share of taxes owed on Northlake's income. *Id.* After Northlake filed for bankruptcy, the bankruptcy trustee sought to recover the dividend, alleging in part that Northlake did not receive reasonably equivalent value in exchange for the dividend. *Id.* at 1254. The Eleventh Circuit affirmed the dismissal of the trustee's claim because the dividend "was made in exchange for the benefits afforded Northlake as described in the Shareholders Agreement[,]" which were evident from the agreement itself. *Id*. at 1257. And "[b]ecause the complaint contains no allegations indicating why these benefits do not constitute a reasonably equivalent

exchange for the" dividend, the Court had "no grounds to conclude they do not." *Id.*

The same is true here—the benefits to MEX are self-evident in the Stock Redemption Agreement, including Husain's release of claims against MEX and affirmation of his post-termination covenants. Moreover, the Trustee has failed to allege why those benefits do not constitute reasonably equivalent value for the Husain Redemption Transfers. She simply alleges that the "dramatic increase in valuation . . . was not justified" without any explanation to why it was not justified (indeed, there are no allegations about MEX's financial state in 2020). Dkt. 1 ¶ 211. The Trustee also alleges that MEX and Husain did not have an independent third party determine the fair market value of the shares, but as the Eleventh Circuit stressed, dollar-for-dollar equivalence is not required to establish reasonably equivalent value. *See In re Fundamental Long Term Care, Inc.*, 873 F.3d at 1344. These allegations are insufficient to adequately plead that MEX did not receive reasonably equivalent value for the Husain Redemption Transfers, providing another basis for dismissing this portion of the claim.

        **b.**    **The Trustee failed to allege facts as to MEX's solvency at the time of the Improper Shareholder Payment, Husain Fee Transfers, and Husain Redemption Transfers.**

The Trustee also failed to allege sufficient facts to show that MEX was insolvent at the time of the Improper Shareholder Payment, Husain Fee Transfers,

and Husain Redemption Transfers. Again, the Trustee failed to include specific factual allegations on this element even though she has engaged in significant discovery in the bankruptcy proceedings and presumably has information about the timing of MEX's insolvency available to her.

The Trustee "must allege enough facts to raise a plausible claim that [MEX] was insolvent **on the date of each transfer**." *In re Menser*, 2021 WL 4484894, at *5 (emphasis added). A trustee fails to do so when she "presents no information on the [debtor's] financial status" at the time of the transfers. *In re Glob. Link Telecom Corp.*, 327 B.R. 711, 718 (Bankr. D. Del. 2005). And "[c]ourts have specifically held that a conclusory allegation that a party was insolvent at a particular time is insufficient to survive a motion to dismiss." *In re Palm Beach Fin. Partners, L.P.*, No. 09-36379-BKC-PGH, 2013 WL 12478838, at *3 n.4 (Bankr. S.D. Fla. July 30, 2013).

There are no specific factual allegations about MEX's solvency at the time of the Improper Shareholder Payment (*see* dkt. 1 ¶ 103), Husain Fee Transfers (*see id.* ¶ 203), or Husain Redemption Transfers (*see id.* ¶¶ 205–17). And while the Trustee alleges that the value of MEX's liabilities exceeded the value of its assets when Husain executed his Employment Agreement in 2018, *id.* ¶ 207, she does not make any allegations about insolvency at the time of the transfers she challenges, the first of which occurred over a year and a half later. *Id.* ¶¶ 214–16.

For these reasons, the Court should partially dismiss Counts 9 and 11 as to the Husain Defendants, leaving only allegations with respect to the LBO Bonus (which are nonetheless time barred).

### 2. The Trustee has failed to allege fraudulent transfer under O.C.G.A. § 18-2-74(a)(1).

The Trustee has also failed to allege a claim for fraudulent transfer under O.C.G.A. § 18-2-74(a) with respect to the Improper Shareholder Payment, Husain Fee Transfers, and Husain Redemption Transfers because she has not alleged the badges of fraud required to plead actual intent. Under § 18-2-74(a) (Count 10), "[a] transfer made . . . by a debtor is voidable as to a creditor . . . if the debtor made the transfer . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Because this is a claim for actual fraud, it must meet the heightened standard of Rule 9(b) of the Federal Rules of Civil Procedure. *In re S. Home & Ranch Supply, Inc.*, 2013 WL 7393247, at *3. "Thus, Plaintiff must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *In re Beaulieu Grp., LLC*, No. 17-41677-BEM, 2021 WL 4469928, at *28 (Bankr. N.D. Ga. Sept. 29, 2021) (internal quotation marks omitted). Intent "is generally established through badges of fraud." *Id.* (citing *In re XYZ Options, Inc.*, 154 F.3d 1262, 1271 (11th Cir. 1998)). A plaintiff must allege "at least two badges of fraud" in order to "support an inference of fraudulent intent." *In re Medici*, 524 B.R. 902,

906–07 (Bankr. N.D. Ga. 2014); *see also In re Beaulieu Grp., LLC*, 2021 WL 4469928, at *30 (same). Badges of fraud include:

> (1) [t]he transfer or obligation was to an insider;
> (2) [t]he debtor retained possession or control of the property transferred after the transfer;
> (3) [t]he transfer or obligation was disclosed or concealed;
> (4) [b]efore the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) [t]he transfer was of substantially all the debtor's assets;
> (6) [t]he debtor absconded;
> (7) [t]he debtor removed or concealed assets;
> (8) [t]he value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) [t]he debtor was insolvent or became insolvent shortly after the transfer was made;
> (10) [t]he transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) [t]he debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

O.C.G.A. § 18-2-74(b).

The Trustee alleges in a conclusory manner that badges 1, 2,[10] 7, 8, 9, and 10 are present. Dkt. 1 ¶ 537. But a careful examination of the Complaint's allegations show that the Trustee has failed to allege most of these badges for the Improper Shareholder Payment, Husain Fee Transfers, and Husain Redemption Transfers.

---

[10]     The Trustee alleges "Husain . . . retained possession or control of the funds," dkt. 1 ¶ 537, presumably to support badge 2. But that requires that the ***debtor*** retain possession of the transferred property, *see* O.C.G.A. § 18-2-74(b)(2), and here the debtor is MEX, not Husain.

With respect to the Improper Shareholder Payment, Husain was no longer an insider at the time of that transfer. "The Georgia Fraudulent Transfer Act and the Bankruptcy Code defines 'insider' in the context of a corporate debtor to include directors, officers, persons in control of the debtor, affiliates, and insiders of affiliates." *Kipperman v. Onex Corp.*, 411 B.R. 805, 854 (N.D. Ga. 2009). Husain resigned as MEX's COO in November 2019, and the transfer occurred in 2020. Dkt. 1 ¶¶ 98, 130. Thus, Husain was no longer an insider when he received the transfer. There are no factual allegations that Husain concealed the Improper Shareholder Payment. For the reasons described above in Section II.B.1, the Trustee has failed to allege that MEX was insolvent at the time of the Improper Shareholder Payment or that MEX did not receive reasonably equivalent value. And there are no factual allegations that the Improper Shareholder Payment occurred shortly before or after MEX incurred a substantial debt.

For the same reasons, the Trustee failed to allege more than one badge of fraud with respect to the Husain Redemption Transfers. Husain was no longer the COO of MEX at the time of those transfers, meaning he was not an insider. *See* dkt. 1 ¶¶ 98, 214–16. And the Trustee failed to allege sufficient facts with respect to concealment, insolvency, reasonably equivalent value, and substantial debt. *See supra* Section II.B.1.

With respect to the Husain Fee Transfers, the Trustee did not allege facts to support concealment, insolvency, reasonable equivalent value, and substantial debt. *See supra* Section II.B.1. At best, the Trustee alleges that Husain was an insider at the time of the Husain Fee Transfers, but the Trustee must allege at least two badges of fraud to support an inference of fraudulent intent. *In re Beaulieu Grp., LLC*, 2021 WL 4469928, at *30. For these reasons, the Court should partially dismiss Count 10 as to the Husain Defendants, leaving only allegations with respect to the LBO Bonus (which are nevertheless time barred).

III.     **The Trustee's claims for recovery and preservation of transfer should be dismissed because they are dependent on the Trustee's insufficiently pled fraudulent transfer claims.**

Count 16, which seeks recovery of transfers pursuant to 11 U.S.C. § 550, and Count 20, which seeks preservation of avoided transfers pursuant to 11 U.S.C. § 551, rise and fall with the Trustee's fraudulent transfer claims and thus should be dismissed. These claims "are not claims for fraud but rather are statutory means to recover any avoided fraudulent conveyances." *In re Glob. Link Telecom Corp.*, 327 B.R. at 717 n.4. As a result, "their survival depends on the survival of the underlying fraudulent conveyance claims." *Id.*; *see also In re Tanner*, No. 22-53852-WLH, 2023 WL 6884714, at *4 (Bankr. N.D. Ga. Oct. 18, 2023) (claims under 11 U.S.C. §§ 550 and 551 provide for liability once it has been established that the transfers at issue are avoidable). Because the Trustee has failed to state a

claim for any fraudulent transfer as to the Husain Defendants, Counts 16 and 20 should be dismissed as well.

## CONCLUSION

For the reasons described above, the Court should grant the Husain Defendant's motion and dismiss all claims against the Husain Defendants.

Respectfully submitted this 30th day of May, 2025.

/s/ Michael A. Caplan
Michael A. Caplan
Georgia Bar No. 601039
Katie W. Gamsey
Georgia Bar No. 817096
CAPLAN COBB LLC
75 Fourteenth Street NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
mcaplan@caplancobb.com
kgamsey@caplancobb.com

*Counsel for Defendants Mehboob Ali Husain, Arash Investments, Inc., and Bano Enterprises, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), I hereby certify that the foregoing document complies with the font and point selections approved by L.R. 5.1(C). The foregoing document was prepared using Times New Roman font in 14 point.

This 30th day of May, 2025.

*/s/ Michael A. Caplan*
Michael A. Caplan
Georgia Bar No. 601039

*Counsel for Defendants Mehboob Ali Husain, Arash Investments, Inc., and Bano Enterprises, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

This 30th day of May, 2025.

*/s/ Michael A. Caplan*
Michael A. Caplan
Georgia Bar No. 601039

*Counsel for Defendants Mehboob Ali Husain, Arash Investments, Inc., and Bano Enterprises, Inc.*