## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JANET NORTHRUP, as Chapter 7 Trustee for the Estate of Mountain Express Company and affiliated debtors,<br><br>    Plaintiff,<br><br>v.<br><br>TURJO WADUD, *et al.*,<br><br>    Defendants. | Civil Action No. 1-25-cv-01404-AT |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS LTE CAPITAL, LLC'S AND LTE ASSETS, LLC'S <u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>

I.    **PRELIMINARY STATEMENT**

Movants LTE Capital, LLC ("<u>LTE Capital</u>") and LTE Assets, LLC ("<u>LTE Assets</u>") respectfully submit this Memorandum of Law in support of their Motion to Dismiss the claims asserted against them in the Complaint ("Compl.") filed by Janet Northrup, Chapter 7 Trustee ("<u>Trustee</u>") for the Estate of Mountain Express Company and its affiliated debtors (collectively, the "<u>Debtors</u>"). While the Complaint spins a wide-ranging narrative of alleged misconduct primarily involving the Debtors' insiders, Turjo Wadud and Lamar Frady, its attempts to ensnare LTE Capital and LTE Assets fail as a matter of law. The claims asserted

against these specific entities rely on impermissible group pleading, conclusory allegations devoid of specific factual support, and legal theories inapplicable to the facts alleged. The Complaint fails to plead essential elements for the common law claims of conversion, money had and received, and unjust enrichment against LTE Capital. Further, the actual fraudulent transfer claims against both Movants fail to meet the heightened pleading standard required by Federal Rule of Civil Procedure 9(b), lacking the necessary particularity to state a claim. Finally, certain equitable claims are potentially barred by defenses apparent on the face of the Complaint itself. Because the Trustee has failed to allege facts sufficient to plausibly state claims for relief against LTE Capital and LTE Assets under the standards set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), Counts Three, Four, Seven, and Nine through Sixteen, and Twenty must be dismissed as to Movants under Rule 12(b)(6).

## II.    BACKGROUND AND PROCEDURAL HISTORY

Mountain Express Company ("MEX") and certain affiliates filed bankruptcy on March 18, 2023. (Compl. ¶ 1). On March 17, 2025, the Trustee filed her Complaint in this Court against numerous defendants, including LTE Capital and LTE Assets. The Complaint alleges that certain insiders of MEX, primarily Turjo Wadud and Lamar Frady, perpetrated a multi-year conspiracy through which they siphoned millions of dollars out of MEX.

The Complaint alleges that LTE Capital is a Delaware limited liability company, with members Turjo Wadud (33%), Lamar Frady (33%), and Berytus Capital, LLC (33%). (Compl. ¶ 70).[1] The primary transaction involving LTE Capital detailed in the Complaint is its receipt of a $1 million "Consulting Fee" on or around October 31, 2022. This fee was allegedly paid in connection with a subsidiary of MEX acquiring five properties in Indiana.[2] (Compl. ¶ 164). The Trustee argues this fee was improper and that MEX did not receive reasonably equivalent value for this payment. (Compl. ¶¶ 164, 169). This $1 million transfer is central to Counts Three (Conversion), Four (Money Had and Received), and Seven (Unjust Enrichment) asserted against LTE Capital. The Complaint also alleges LTE Capital received $35,000 on March 3, 2023, which is listed as one of the "One-Year Transfers" the Trustee seeks to avoid. (Compl. ¶ 255, Ex. B). This $35,000 transfer and the $1 million Consulting Fee form the basis for fraudulent

---

[1] The Complaint incorrectly states that Wadud and Frady are members of LTE Capital, they are not. They indirectly hold interests in LTE Capital through Time and Water, LLC. Further, the Complaint conveniently omits the fact the direct and indirect interests Wadud and Frady hold in Movants are not controlling interests. While factual issues like this are not pertinent to a motion to dismiss, such misstatements and omissions reinforce the Complaint's failure to meet basic pleading requirements.

[2] The properties referenced in paragraph 164 were located in Iowa, not Indiana. Again, while factual issues like this are not pertinent to a motion to dismiss, such mistakes reinforce the Complaint's failure to meet basic pleading requirements.

transfer claims against LTE Capital under Counts Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen.

The Complaint also states that LTE Assets is a Delaware limited liability company, with Turjo Wadud and Lamar Frady alleged to each hold a 33% ownership interest. (Compl. ¶ 73). The Complaint alleges that LTE Assets received two specific transfers, characterized as "One-Year Transfers": $75,000 on February 1, 2023, and $150,000 on March 3, 2023. (Compl. ¶ 255, Ex. B). These two transfers, totaling $225,000, are the basis for fraudulent transfer claims asserted against LTE Assets under Counts Nine, Ten, Eleven, Twelve, Thirteen, Sixteen and Twenty.

## III.    LEGAL STANDARD

### A.    Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a claim for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The plausibility standard articulated in *Twombly* and *Iqbal* requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. While a court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff, this tenet "is

inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A court should "begin by identifying conclusory allegations that are not entitled to an assumption of truth." *Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). The court can then consider the well-pleaded facts and "determine whether they give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679. "[A] complaint that pleads facts that are merely consistent with liability . . . stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

### B.    <u>Rule 9(b) Standard</u>

Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This particularity requirement departs from the more liberal pleading standard of Rule 8(a).

Courts strictly enforce these requirements. For instance, a plaintiff's failure to link specific misstatements to specific defendants can be fatal to a fraud claim. *See, e.g., Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007) (affirming dismissal where complaint did not attribute specific misrepresentations to specific defendants). Further, merely alleging that a

defendant *could* have known about fraud is insufficient; a complaint must set forth specific facts creating an inference of actual knowledge or reckless disregard.

While Rule 9(b) permits "malice, intent, knowledge, and other conditions of a person's mind" to be alleged generally, this allowance does not give plaintiffs license to make purely conclusory allegations of intent. Plaintiffs must still allege facts that give rise to a "strong inference" of fraudulent intent or the requisite state of mind. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314, 322–24 (2007) (requiring the inference of scienter to be "cogent and compelling," not merely "reasonable" or "permissible").

Failure to meet the stringent pleading requirements of Rule 9(b) will result in the dismissal of the fraud claims. Conclusory allegations that fraud was committed, or boilerplate recitations of the elements of fraud without specific supporting factual details detailing the specific circumstances of the fraud, are routinely found insufficient. *See, e.g., Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

## IV.    <u>ARGUMENT</u>

The Trustee's claims fall into two buckets: (a) traditional state court claims (conversion, money had and received, and unjust enrichment), and (b) avoidable transfer claims arising under the Bankruptcy Code and Georgia's Uniform

Voidable Transactions Act ("UVTA"). As is set forth below, the Complaint fails to adequately plead any of these claims.

A. **The Complaint must be dismissed as to Movants because it relies on impermissible group pleading (Counts Three, Four, Seven, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, and Twenty).**

Throughout the Complaint, the Trustee repeatedly lumps LTE Capital and LTE Assets together with the other Defendants with little to no effort to discuss the specifics of the actual claims against them. Such lumping violates Rule 8 and does not put a defendant on notice of the claims against it. *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998) (rejecting the use of "shotgun pleading" and upholding a district court's authority to policy such behavior at the outset of a case). For example, Movants are often included in "lists" of defendants paired with conclusory allegations of wrongdoing. (Compl. ¶¶ 166, 169, 170, 178, 179, 180, 181, 182, 183, 186, 187, 188, 218, 239, 240, 255, and 348). The paragraphs that actually discuss Movants are scant. The Debtors' dealings with LTE Capital are substantively discussed in only one paragraph. (Compl. ¶ 164). The Debtors' dealings with LTE Assets are never discussed.

The Complaint also lumps LTE Capital and LTE Assets together with Wadud, Frady, and other "Related Entity Defendants" in its allegations of fraudulent conduct. Rule 9(b) requires that "in a case involving multiple defendants, the complaint should inform each defendant of the nature of his

alleged participation in the fraud." *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016); *see also W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 Fed. Appx. 81 (11th Cir. 2008) (in a case with multiple defendants, the complaint should contain specific allegations with respect to each defendant; generalized allegations lumping multiple defendants together are insufficient).

With respect to the Trustee's actual fraudulent transfer claims, the Complaint fails to adequately differentiate the specific fraudulent acts or intent of the Debtors that specifically relate to the transfers to LTE Capital and LTE Assets. The allegations that Wadud and Frady, as insiders of MEX, orchestrated fraudulent transfers from MEX to multiple entities are not, without more, particularized to LTE Capital or LTE Assets as transferees.

The Trustee's use of impermissible group pleading does not meet the heightened requirements of Rule 9(b) or even the basic requirements of Rule 8. As to Movants, the Complaint should be dismissed.

**B.**    **The Complaint fails to state plausible claims related to the $1 Million Consulting Fee "received by" LTE Capital (Counts Three, Four, Seven, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen).**

The Complaint describes a "Consulting Fee" of $1 million purportedly "received by" LTE Capital and then includes that Consulting Fee "collectively with all other transfers to or for the benefit of LTE Capital" in the definition of "LTE Capital Sale-Leaseback Fees." (Compl. ¶ 164). Counts Nine through Fifteen

seek to avoid and recover the LTE Capital Sale-Leaseback Fees as either actual fraudulent transfers, constructive fraudulent transfers, or preferential transfers under the Bankruptcy Code or under state law. To state a claim under any of these sections, the Trustee must plead that a Debtor transferred *its property* to LTE Capital. *Compare* 11 U.S.C. §§ 547 and 548; O.C.G.A. § 18-2-75(a); O.C.G.A. § 18-2-74(a)(1); O.C.G.A. § 18-2-74(a)(2); O.C.G.A. § 18-2-75(b). Counts Three (Conversion), Four (Money Had and Received), and Seven (Unjust Enrichment) as asserted against LTE Capital focus solely on the LTE Capital Sale-Leaseback Fees. To state a conversion claim, a plaintiff must plead that it has "title to the property or the right of possession." *Metzger v. Americredit Fin. Svcs.*, 615 S.E.2d 120, 122 (Ga. App. 2005). Likewise, a claim for money had and received only lays when "a person has received money of the other . . . ." *Think Dev. Sys., Inc. v. Cloudious, LLC*, 891 S.E.2d 426, 435 (2023). And a claim for unjust enrichment requires a plaintiff to assert that "the defendant induced or encouraged the plaintiff to provide something of value to the defendant [and] that the plaintiff provided a benefit to the defendant with the expectation that the defendant would be responsible for the cost thereof . . . ." *Collins v. Athens Orthopedic Clinic*, 849 S.E.2d 213, 216 (2020).

The Complaint does not allege that MEX (or any other Debtor) had an interest in the Consulting Fee or the money purportedly "received by" LTE Capital. Nor does it allege that any Debtor transferred the Consulting Fee to LTE

Capital. And while it does allege that LTE Capital "received" the Consulting Fee "in connection with a MEX subsidiary acquiring five properties in Indiana on or around October 31, 2022," it does not allege that the unnamed subsidiary was a Debtor or that the funds used to pay the Consulting Fee came from a Debtor.

In addition to the Consulting Fee, the Complaint includes "all other transfers to or for the benefit of LTE Capital" in the definition "LTE Capital Sale-Leaseback Fees." A broad, conclusory statement like this is precisely the kind of "threadbare recital" that *Iqbal* and *Twombly* admonish. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In sum, Counts Three, Four, Seven, and Nine through Fifteen fail to state a claim on their face under Rule 8 and certainly fail to meet the particularity requirements of Rule 9(b) that apply to the actual fraudulent transfer claims. Since none of the Counts in the Complaint against LTE Capital states a claim as it relates to the Consulting Fee or "all other transfers to or for the benefit of LTE Capital," such counts should be dismissed.

### C. <u>The Complaint fails to state plausible constructive fraudulent transfer and preference claims (Counts Nine, Eleven, Twelve, Thirteen, and Fourteen).</u>

To properly plead constructive fraudulent transfer and preference claims (under either the Georgia UVTA or the Bankruptcy Code), the Complaint must

allege facts to support insolvency. *See* 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii); O.C.G.A. §§ 18-2-74(a)(2) and 18-2-75(a) and (b). "While the Trustee need not prove insolvency in his pleadings, he must allege enough facts to raise a plausible claim that Menser was insolvent **on the date of each transfer**." *In re Menser*, No. 18-65681-JWC, 2021 WL 4484894, at *5 (Bankr. N.D. Ga. Sept. 30, 2021) (emphasis added). Here, the Complaint contains multiple references to insolvency. *See* Compl. ¶ 335 (MEX was insolvent at the end of 2018); ¶ 337 (MEX was solvent at the end of 2019); ¶ 330 (MEX may have been insolvent again depending on how you accounted for certain revenues). None of the allegations allege that the Debtor that made each alleged transfer (if ever properly pleaded) was insolvent on the date of each specific transfer. And given the alleged bouncing between solvency and insolvency, it is not reasonable to infer insolvency on any particular date.

To succeed on her constructive fraudulent transfer claims, the Trustee must also allege that the transferor Debtor (if one is ever properly pleaded) did not receive reasonably equivalent value for the transfer. *See* 11 U.S.C. § 548(a)(1)(B)(i); O.C.G.A. §§ 18-2-74(a)(2) and 18-2-75(a); *In re Menser*, 2021 WL 4484894, at *6 ("To plead a lack of reasonably equivalent value 'the plaintiff must present some information about the value the debtor received in exchange for the transfer.'") (internal citation omitted). Here, conclusory allegations are scattered throughout the Complaint that MEX "did not receive reasonably equivalent value" for various

transfers. But the Trustee makes no specific allegation that that the Consulting Fee or the other transfers to LTE Capital or LTE Assets were for less than reasonably equivalent value, and she cites no facts to support such an allegation. If anything, the Complaint alleges that the Debtors did receive value for the transfers. *See* Compl. ¶ 164 (Consulting Fee paid in connection with acquisition of five properties in Indiana).

The Complaint fails to adequately plead facts to support constructive fraudulent transfer or preference claims against LTE Capital and LTE Assets. Counts Nine, Eleven, Twelve, Thirteen, and Fourteen should be dismissed.

     **D.**     <u>**The Complaint fails to state plausible claims for Conversion, Money Had and Received, and Unjust Enrichment against LTE Capital (Counts, Three, Four, and Seven).**</u>

     **1.**     <u>**The Complaint fails to plead facts to support Count Three (Conversion).**</u>

The Trustee's claim for conversion against LTE Capital fails as a matter of law because money generally is not subject to a conversion claim, and the Complaint does not allege facts that would bring the purported $1 million "Consulting Fee" (Compl. ¶ 164) or the $35,000 payment (Compl. ¶ 255, Ex. B) within the narrow exception for specific, identifiable funds.

Under Georgia law, conversion is "[a]ny distinct act of dominion and control wrongfully asserted over another's personal property in denial of his right, or inconsistent with it . . . ." *Taylor v. Powertel, Inc.*, 551 S.E.2d 765, 769 (2001)

(internal quotations omitted). Yet "as fungible intangible personal property, money, generally, is not subject to a civil action for trover with an election for damages for its conversion." *Id.* at 359. An action for conversion of money may lie only if the money comprises "a specific, separate, identifiable fund." *Id.*; *see also Old Missouri Bank v. Vinyard*, 2023 WL 4422845, at *4 (N.D. Ga. July 10, 2023) (reiterating the general rule and exception). A plaintiff must demonstrate title to, or an immediate right of possession in, that specific fund. *Taylor*, 551 S.E.2d at 769. Here, the Complaint alleges that LTE Capital received a $1 million Consulting Fee and a separate $35,000 payment. The Complaint does not allege a specific, identifiable fund belonging to MEX that LTE Capital was obligated to segregate and return in its original form. *See Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1299 (N.D. Ga. 2015) (dismissing conversion claim where plaintiff alleged misapplication of mortgage payments because she merely alleged improper crediting, not wrongful dominion over a specific fund belonging to her after payment).

Instead, the Trustee's claim is essentially that these transfers were improper, fraudulent, or lacked consideration (Compl. ¶¶ 164, 169, 255), which sounds in debt, fraudulent transfer, or unjust enrichment—not conversion. *See Taylor*, 551 S.E.2d at 770 ("In short, plaintiff should have sued for money had and received as money owed to him, not conversion of a specific fund of money to which he had

an immediate right of possession."); *Zimmerman v. Roche*, 2010 WL 11506545, at *7 (N.D. Ga. Sept. 20, 2010) (dismissing conversion claim for unspecified capital contributions because, while a specific sum, they were not for a specific designated purpose that was then misused, but for general capital infusion, and any failure to compensate would not be conversion); *Rubenstein v. Palatchi*, 857 S.E.2d 81, 86 (2021) (affirming summary judgment against conversion claim where loan proceeds were deposited into a general operating fund, intermingled with other monies, and could not be differentiated; such allegations concern "nothing more than a failure . . . to pay back money allegedly owed," not conversion of a specific fund). This is not conversion.

The Complaint also fails to allege that MEX retained title or an immediate right to possession of the specific dollars comprising the $1 million fee or the $35,000 payment after they were transferred to LTE Capital. *Cf. Horizon Air Charter, LLC v. ACM Havayollari Sanayi TIC.LTD.STI*, 2022 WL 16702798, at *5 (S.D. Ga. Nov. 3, 2022) (advance deposit for charter services constituted a specific fund); *Zimmerman*, 2010 WL 11506545, at *8 (allowing conversion claim for specific $108,000 investments intended for purchasing stock in plaintiffs' names but titled in another entity's name). Once these funds were paid to LTE Capital, they became LTE Capital's funds. Without allegations of fact showing these payments

constituted a specific, identifiable fund that LTE Capital was obligated to return in its original form, the conversion claim fails.

###     2.    The Complaint pleads sufficient facts to establish the defense of *in pari delicto*, which bars Count Four (Money Had and Received).

The Trustee's Money Had and Received claim fails under the doctrine of *in pari delicto*, which "provides that a wrongdoer may not profit from his wrongful acts." *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1149 (11th Cir. 2006). A bankruptcy trustee "stands in the shoes of the debtor and has standing to bring any suit that the debtor could have instituted" at the commencement of the bankruptcy. *Id.* at 1150 (internal quotations omitted). Consequently, "there is no suggestion in the text of the Bankruptcy Code that the trustee acquires rights and interests *greater* than those of the debtor." *Edwards*, 437 F.3d at 1150 (emphasis in original). If a claim by the debtor would have been subject to the *in pari delicto* defense, the same claim asserted by the trustee is subject to the same affirmative defense. *Id.*; *Kipperman v. Onex Corp.*, 411 B.R. 805, 881 (N.D. Ga. 2009) (a bankruptcy trustee's claims are subject to the same defenses that could have been asserted against the debtor). *In pari delicto* can be asserted as a defense to a claim for money had and received. *Standard Club v. Saphire*, 102 S.E.2d 72, 74 (1958).

Here, the Complaint is replete with allegations that Wadud and Frady, acting through MEX, engaged in a fraudulent scheme. (Compl. ¶¶ 1–5, 70, 73, 100–105, 164). The Complaint also alleges that Wadud and Frady "caused MEX to make the $1 million Consulting Fee Payment to LTE Capital" (Compl. ¶ 164) and directed other transfers to the LTE entities (Compl. ¶ 255, Ex. B). These allegations establish that MEX, through its controlling insiders Wadud and Frady (who together allegedly owned 97% of MEX and dominated its operations) was an active participant in the very wrongdoing that forms the basis of the Trustee's claim.

Where, as here, the Complaint's own allegations portray Wadud and Frady's pervasive control and direction of MEX, *in pari delicto* is apparent on the face of the Complaint. *See Edwards*, 437 F.3d at 1152 (affirming dismissal where debtor was an active participant). As a participant in the wrongdoing, MEX would be barred by *in pari delicto* from recovering from Movants outside of bankruptcy. The Trustee, standing in the Debtors' shoes, is also so barred. *Edwards*, 437 F.3d at 1150, 1152. While Georgia law recognizes exceptions to *in pari delicto*, such as the "adverse interest" or "innocent creditor" exceptions, none of these is pleaded in the Complaint. *See In re Aliera Companies, Inc.*, 665 B.R. 468, 501, 505–07 (Bankr. N.D. Ga. 2024) (discussing these exceptions under Georgia law), the applicability of these exceptions is typically a fact-intensive inquiry. *Id.* at 506, 508; *Laddin v.*

*Tauber & Balser, P.C.*, 2012 WL 12892430, at *2 (N.D. Ga. June 18, 2012) (noting the fact-intensive nature of the adverse interest exception). As a result, this claim must be dismissed.

> **3.    The Complaint fails to plead sufficient facts to support Count Seven (Unjust Enrichment) but does plead sufficient facts to establish the defense of *in pari delicto*, which bars the claim.**

The Trustee's claim for Unjust Enrichment against LTE Capital (Count Seven) is likewise barred by the doctrine of *in pari delicto* and, alternatively, is precluded by the alleged existence of a contract governing the subject matter.

First, for the same reasons articulated above, *in pari delicto* bars the Trustee's unjust enrichment claim. The Complaint alleges that MEX, through its controlling insiders Wadud and Frady, actively participated in and directed the very transfers that allegedly unjustly enriched LTE Capital. (Compl. ¶¶ 1–5, 70, 100–105, 164). MEX would thus be barred from asserting an unjust enrichment claim to recover funds it wrongfully caused to be paid to Movants. And the Trustee, standing in MEX's shoes, is also barred. *Edwards*, 437 F.3d at 1150.

Second, an unjust enrichment claim is an equitable remedy that is generally unavailable when an express or implied contract governs the subject of the dispute. *See Collins v. Athens Orthopedic Clinic*, 849 S.E.2d 213, 216 (2020) ("Unjust enrichment is an equitable principle that may be applied when there is no valid written contract between the parties[.]" (citation and punctuation omitted)); *Tidikis*

*v. Network for Med. Commc'ns & Research, LLC*, 619 S.E.2d 481 (2005) ("The theory of unjust enrichment applies when there is no legal contract . . . ."). The Complaint itself alleges that the primary transaction at issue, the $1 million payment to LTE Capital, was a "Consulting Fee." (Compl. ¶ 164). This allegation implies the existence of a contractual arrangement for which the fee was paid, and the Complaint does not aver a lack of contractual obligation. If a contract existed, express or implied, the Trustee cannot simultaneously maintain an equitable claim for unjust enrichment, particularly when not pleaded as an alternative to a failed contract claim. *See Collins*, 356 Ga. App. at 778–79 (affirming dismissal of unjust enrichment claim pleaded as a separate tort and not as an alternative remedy for a failed contract). The Trustee's claim is essentially duplicative of its conversion and fraudulent transfer claims; it does not adequately plead unjust enrichment and should be dismissed.

### E.    The Complaint fails to state plausible claims for Actual Fraudulent Transfers against LTE Capital and LTE Assets (Counts Ten and Fifteen) under Rule 9(b).

The Trustee's actual fraudulent transfer claims against LTE Capital and LTE Assets under 11 U.S.C. § 548(a)(1)(A) (Count Ten) and O.C.G.A. § 18-2-74(a)(1) (Count Fifteen) must be dismissed for failure to plead fraud with the particularity required by Rule 9(b).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This heightened pleading standard helps provide defendants with fair notice of the specific fraudulent conduct alleged, protect reputations from unfounded accusations of fraud, and reduce the number of strike suits. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1297 (4th ed. 2025) (hereinafter "Wright & Miller"). The particularity requirement of Rule 9(b) applies not only to claims explicitly labeled "fraud" but also to any claims that are "premised on fraudulent conduct" or where the "gravamen" of the claim sounds in fraud. *Id.*

Claims for actual fraudulent transfer, under both federal bankruptcy law (11 U.S.C. § 548(a)(1)(A)) and Georgia's Uniform Voidable Transactions Act (O.C.G.A. § 18-2-74(a)(1)) inherently sound in fraud and are subject to the heightened pleading standards of Rule 9(b). *See, e.g.*, Wright & Miller § 1297 (noting that claims of fraudulent transfer or fraudulent conveyance are subject to Rule 9(b)). While Rule 9(b) permits conditions of mind like intent to be alleged generally, this does not obviate the need to plead the *circumstances* constituting the fraud with particularity, from which a strong inference of fraudulent intent can be drawn. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322–24 (2007).

**1.**    **The Complaint fails to plead facts to support the allegation that MEX intended to hinder, delay, or defraud creditors as to the specific transfers to LTE Capital and LTE Assets.**

The Complaint is devoid of specific factual allegations detailing the intent that the transferor, purportedly MEX or some other debtor acting through its insiders Wadud and Frady, had with respect to *the specific transfers* to LTE Capital or LTE Assets. The allegations focus heavily on the purported fraudulent scheme of MEX's insiders, Wadud and Frady. The Complaint fails, however, to plead facts demonstrating that MEX intended to hinder, delay, or defraud its creditors specifically as to LTE Capital and LTE Assets.

While Wadud and Frady are alleged to be members of LTE Capital and LTE Assets (Compl. ¶¶ 70, 73) and to have "caused" or "directed" these transfers (Compl. ¶¶ 164, 255), these allegations are conclusory as to MEX's intent for these specific transactions. Rule 9 demands more than alleging insider status or control—companies transfer funds to insiders everyday with no intent to defraud. Instead, it requires the Trustee to plead some facts showing MEX's fraudulent intent in making *the specific transfers* to LTE Capital and LTE Assets. *See In re Tanglewood Farms, Inc. of Elizabeth City,* 2013 WL 1405729, at *9 (Bankr. E.D.N.C. Apr. 8, 2013) (holding that the trustee's mere allegations that the payments received by transferee in satisfaction of the debtor's obligations under lines of credit were insufficient to establish, with the particularity required under Rule

9(b), that the payments were actual fraudulent transfers made with the intent to hinder, delay or defraud the debtor's creditors); *Meininger v. Euram, LLC* (In re Land Res., LLC), 23 Fla. L. Weekly Fed. B 351 (U.S. Bankr. M.D. Fla. 2011) (dismissing an actual fraudulent transfer claim because an "allegation that a debtor made an aggregate-amount or series of cash or other transfers over a period of time, without further particularization, is insufficient" and requiring allegations of fraudulent intent for specific fraudulent transfers, not a mere generalized scheme).

      **2.**    **The Complaint fails to plead with particularity that the specific transfers to LTE Capital and LTE Assets were fraudulent transfers.**

Rule 9(b) requires the "who, what, when, where, and how" of the alleged fraud. *See Monroe Cnty. Employees' Retirement Sys. v. Southern Co.*, 2018 WL 1558577, *3 (N.D. Ga. 2018); s*ee also* Wright & Miller § 1297. The Complaint fails to provide this level of detail for the specific transfers to LTE Capital (the $1 million "Consulting Fee" and the $35,000 payment) and LTE Assets (the $75,000 and $150,000 payments). Beyond alleging the dates and amounts, and that Wadud and Frady "caused" or "directed" these transfers (Compl. ¶¶ 164, 255), the Complaint fails to allege any facts to support that *these specific transfers* were made with intent to defraud creditors.

For example, the Complaint pleads that "LTE Capital received a purported 'Consulting Fee' of $1 million (collectively with all other transfers to or for the benefit of LTE Capital, the 'LTE Capital Sale-Leaseback Fees')." (Compl. ¶ 165).

The Complaint relies heavily on a recitation of generic "badges of fraud" (Compl. ¶¶ 537, 592 for Counts Ten and Fifteen respectively) and applies these summarily to all defendants and all transfers subject to these counts. For example, the Complaint generally alleges the transfers were made to insiders, that MEX retained control, that assets were concealed, that MEX was insolvent, and that reasonably equivalent value was not received. (Compl. ¶¶ 537 (i)–(vii), 592 (i)–(vii)). While badges of fraud can be circumstantial evidence of fraud, Rule 9(b) requires more than a listing of the badges of fraud. Merely pasting a checklist of statutory badges of fraud without particularized factual support linking them to the specific conduct and intent of the transferor regarding the specific transfers does not satisfy Rule 9(b)'s demand for particularity. *U.S. ex rel. Hirt v. Walgreen Co.*, 846 F.3d 879 (6th Cir. 2017) (complaint described unlawful gift card distribution but not the submission of claims obtained thereby, nor facts making such submission highly likely, thus failing Rule 9(b)'s particularity requirement for linking the scheme to actual false claims); *United States v. Eastwick Coll.*, 657 Fed. Appx. 89, 96 (3d Cir. 2016) (holding that "although [the complaint] sporadically provides particularized detail in places," it was deficient because "as

a whole, it continues to rely on conclusory assertions that are devoid of the factual support"); *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 358 (1st Cir. 2013) (complaint fell short of Rule 9(b)'s particularity requirement because, although it recited the elements of fraud, it failed to specify when, where, and how often the allegedly false statements were made, what specifically was stated, the specific nature of the resulting monetary harm, and was silent on actual reliance, constituting a "vague pleading"); *Grassi v. Moody's Investors Servs.*, 540 Fed. Appx. 737, 738 (9th Cir. 2013) (affirming dismissal with prejudice where the complaint lacked "specific facts" and plaintiffs admitted they might have "NO specific evidence to cite" to support their claims); Wright & Miller § 1297 (a pleading that "simply alleges the technical elements of fraud without providing such underlying supporting details will not satisfy the rule's pleading-with-particularity requirement.").

    **F.**    **Because the avoidance counts fail, Counts Sixteen and Twenty also fail.**

Counts Sixteen and Twenty seek to avoid and recovery the transfers alleged in Counts Nine through Fifteen. Because each of those claims fails for the reasons above, Counts Sixteen and Twenty should also be dismissed.

**V.**    **CONCLUSION**

The Trustee's Complaint fails to state plausible claims for relief against Movants. As such, Movants respectfully request that this Court enter an Order

dismissing Counts Three, Four, Seven, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, and Twenty of the Complaint as asserted against them, with prejudice, and granting such other and further relief as the Court deems just and proper.

Date: May 30, 2025

Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

*/s/ Kathleen G. Furr*
Kathleen G. Furr (GA Bar No. 589008)
3414 Peachtree Road, Suite 1500
Atlanta, Georgia 30326
Telephone: 404.221.6533
kfurr@bakerdonelson.com

-AND-

**ICE MILLER LLP**

John C. Cannizzaro (OH Bar No. 0085161)
250 West Street, Suite 700
Columbus, OH 43215
(614) 462-1070
John.Cannizzaro@icemiller.com
(admitted pro hac vice)

Michael Collins (MD Bar No. 1712130107)
100 Light Street, Suite 1350
Baltimore, MD 21202
Telephone: (404) 951-5872
Michael.collins@icemiller.com
(admitted pro hac vice)

*Counsel for Defendants LTE Capital, LLC and LTE Assets, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| JANET NORTHRUP, as Chapter 7 Trustee for the Estate of Mountain Express Company and affiliated debtors,<br><br>          Plaintiff,<br><br>v.<br><br>TURJO WADUD, *et al.*,<br><br>          Defendants. | Civil Action No. 1-25-cv-01404-AT |

## <u>CERTIFICATE OF SERVICE AND TYPESIZE COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), undersigned counsel certifies that the foregoing was prepared using Book Antiqua, 13pt. font, a font size and point selection approved by Local Rule 5.1(C). Undersigned counsel further certifies that on May 30, 2025, a copy of the foregoing was filed electronically with the Court's CM/ECF system and thereby served electronically upon all ECF-registered counsel of record.

Date: May 30, 2025                    Respectfully submitted,

                                      **BAKER, DONELSON, BEARMAN,
                                      CALDWELL & BERKOWITZ, PC**

                                      */s/ Kathleen G. Furr*
                                      Kathleen G. Furr (GA Bar No. 589008)
                                      3414 Peachtree Road, Suite 1500