## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| JANET NORTHRUP, as Chapter 7 Trustee for the Estate of Mountain Express Company and affiliated debtors, | |
| Plaintiff, | |
| v. | No. 1:25-cv-1404-MLB |
| TURJO WADUD et al., | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF THE
## <u>WADUD-FRADY DEFENDANTS' MOTION TO DISMISS</u>

## **TABLE OF CONTENTS**

TABLE OF CONTENTS................................................................................i

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION ......................................................................................1

LEGAL STANDARD.................................................................................3

ARGUMENT ..............................................................................................4

I.      THE COMPLAINT IS AN IMPERMISSIBLE SHOTGUN
        PLEADING. ......................................................................................4

II.     THE TRUSTEE'S INTENTIONAL TORT AND RICO CLAIMS
        FAIL...................................................................................................8

        A.      MEX necessarily consented to and participated in all of the
                alleged "misconduct" by Wadud and Frady............................8

        B.      Each intentional tort claim fails for additional reasons......................11

                1.      Conversion .................................................................11

                2.      Unjust enrichment and money had and received ......................11

                3.      Georgia RICO claims.................................................12

III.    THE TRUSTEE'S FIDUCIARY DUTY-BASED CLAIMS FAIL.............19

        A.      The breach of fiduciary and statutory duty claims fail. .....................19

                1.      Conduct alleged before March 2020 is irrelevant or
                        barred..........................................................................21

                2.      Wadud and Frady are shielded by the business judgment
                        rule..............................................................................22

                3.      The Trustee fails to allege breach of a "duty of
                        oversight." .................................................................25

                4.      Wadud and Frady are exculpated from duty of care
                        violations. .................................................................30

        B.      The aiding and abetting breach of fiduciary duty claims fail. ...........31

                1.      "Improper conduct or wrongful action without privilege".......31

                2.      "Malice or intent to injure" .....................................34

IV.    THE TRUSTEE'S AVOIDANCE CLAIMS FAIL. ....................................35

    A.    The "constructive fraudulent" transfer claims fail............................36

        1.    "Insolvency"................................................................36

        2.    "Reasonably equivalent value"..................................40

    B.    The "actual fraudulent" transfer claims fail. .......................................47

    C.    Claims based on transfers before March 2019 are time-barred. .........49

    D.    Fraudulent transfer claims not based on transfers by MEX fail. ........50

    E.    The preference claims fail. .................................................................51

    F.    The Trustee's direct claims against the Waduds fail. ........................53

    G.    The "civil conspiracy to violate the UVTA" claim fails....................55

V.    THE TRUSTEE'S "ALTER EGO" CLAIMS FAIL. ....................................57

CONCLUSION........................................................................................................60

CERTIFICATE OF COMPLIANCE.......................................................................62

APPENDIX ...............................................................................................................1

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Acree v. McMahan*,
  585 S.E.2d 873 (Ga. 2003) .................................................................58

*In re All Am. Bottled Water Corp.*,
  No. 06-43133, 2009 WL 722994 (Bankr. W.D. Wash. Mar. 17,
  2009), *aff'd*, 404 F. App'x 111 (9th Cir. 2010)............................................25, 42

*Almanza v. United Airlines, Inc.*,
  851 F.3d 1060 (11th Cir. 2017) ...................................................15, 16

*Am. Dental Assoc. v. Cigna Corp.*,
  605 F.3d 1283 (11th Cir. 2010) ........................................................23

*Am. Ins. Mgmt. Grp. v. Am. Nat'l Ins. Co.*,
  No. 1:05-CV-0352-JEC, 2007 WL 9710013 (N.D. Ga. Mar. 30,
  2007) ...............................................................................................17

*Am. United Life Ins. v. Martinez*,
  480 F.3d 1043 (11th Cir. 2007) ........................................................14

*Ambrosia Coal & Constr. Co. v. Pages Morales*,
  482 F.3d 1309 (11th Cir. 2007) ........................................................14

*Anderson v. Dist. Bd. of Trs.*,
  77 F.3d 364 (11th Cir. 1996) ..............................................................5

*Angel Oak Mortg. Sols. LLC v. Mastronardi*,
  593 F. Supp. 3d 1234 (N.D. Ga. 2022)...............................................33

*Baillie Lumber Co. v. Thompson*,
  279 Ga. 288 (2005) ...................................................................58, 59

*In re Bal Harbour Club, Inc.*,
  316 F.3d 1192 (11th Cir. 2003) ........................................................23

*Barnes v. Tillery*,
  907 S.E.2d 914 (Ga. Ct. App. 2024), *cert. denied* (Ga. 2025) ...........49

*Beckrich Holdings, LLC v. Bishop & Quint*,
   No. 18116, 2001 WL 167732 (Del. Ch. Feb. 15, 2001) ..................................... 60

*BFP v. Resolution Tr. Corp.*,
   511 U.S. 531 (1994) .................................................................................. 40

*Bienert v. Dickerson*,
   624 S.E.2d 245 (Ga. Ct. App. 2005) ............................................................ 20

*Birkett L. Williams Co. v. Smith*,
   353 F.2d 60 (5th Cir. 1965) ........................................................................ 8

*Blakey v. Victory Equip. Sales, Inc.*,
   576 S.E.2d 288 (Ga. Ct. App. 2002) ............................................................ 8

*In re Blast Fitness Grp., LLC*,
   602 B.R. 208 (Bankr. D. Mass. 2019) .......................................................... 46

*Bolinger v. First Multiple Listing Serv., Inc.*,
   838 F. Supp. 2d 1340 (N.D. Ga. 2012) ........................................ 27, 52, 54, 57

*Bonner v. State*,
   794 S.E.2d 186 (Ga. Ct. App. 2016) ............................................................ 19

*Bragg v. Bank of Am., N.A.*,
   No. 1:14-cv-546, 2014 WL 2154190 (N.D. Ga. May 21, 2014) ...................... 57

*Burgess v. Religious Tech. Ctr., Inc.*,
   600 F. App'x 657 (11th Cir. 2015) ............................................................... 13

*In re Butler Logging, Inc.*,
   538 B.R. 174 (Bankr. S.D. Ga. 2015) ........................................................... 50

*In re Caremark Int'l Inc. Derivative Litig.*,
   698 A.2d 959 (Del. Ch. 1996) ................................................................ 26, 29

*Chaparro v. Carnival Corp.*,
   693 F.3d 1333 (11th Cir. 2012) ..................................................................... 3

*Chepstow Ltd. v. Hunt*,
   381 F.3d 1077 (11th Cir. 2004) ................................................................... 55

*Church Joint Venture, L.P. v. Blasingame*,
  947 F.3d 925 (6th Cir. 2020) ...............................................................59

*Cisneros v. Petland, Inc.*,
  972 F.3d 1204 (11th Cir. 2020) ....................................................13, 16

*City of Atlanta v. Hotels.com, L.P.*,
  775 S.E.2d 276 (Ga. Ct. App. 2015).................................................11

*Cottrell v. Smith*,
  788 S.E.2d 772 (Ga. 2016) ........................................................31, 34

*Cramer v. Florida*,
  117 F.3d 1258 (11th Cir. 1997) ..........................................................7

*Crystallex Int'l Corp. v. Petroleos de Venez., S.A.*,
  879 F.3d 79 (3d Cir. 2018) ................................................................50

*Curry v. TD Ameritrade, Inc.*,
  No. 1:14-CV-1361, 2015 WL 11251449 .........................................33

*Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG*,
  341 F. App'x 487 (11th Cir. 2009) ...................................................13

*Deal v. Tugalo Gas Co., Inc.*,
  991 F.3d 1313 (11th Cir. 2021) ........................................................20

*In re Dunston*,
  566 B.R. 624 (Bankr. S.D. Ga. 2017)...............................................37

*E.F. Hutton & Co. v. Hadley*,
  901 F.2d 979 (11th Cir. 1990) ..........................................................55

*In re Edgewood Food Mart, Inc.*,
  666 B.R. 418 (Bankr. N.D. Ga. 2024) ..............................................27

*EnduraCare Therapy Mgmt., Inc. v. Drake*,
  298 681 S.E.2d 168 (Ga. Ct. App. 2009).........................................58

*Engram v. Engram*,
  463 S.E.2d 12 (Ga. 1995) .................................................................12

v

*In re Fabian*,
   458 B.R. 235 (Bankr. D. Md. 2011), *aff'd*, 475 B.R. 463 (D. Md.
   2012), *aff'd*, 491 F. App'x 420 (4th Cir. 2012) ....................................54

*FDIC v. Loudermilk*,
   761 S.E.2d 332 (Ga. 2014) ...............................................................22

*Feldman v. Am. Dawn, Inc.*,
   849 F.3d 1333 (11th Cir. 2017) ........................................................18

*In re Flashcom, Inc.*,
   647 F. App'x 689 (9th Cir. 2016) ......................................................41

*In re Friedman's Inc.*,
   385 B.R. 381 (S.D. Ga. 2008), *vacated in part on other grounds*,
   394 B.R. 623 (S.D. Ga. 2008) ..........................................................20

*In re Fundamental Long Term Care, Inc.*,
   873 F.3d 1325 (11th Cir. 2017) .............................................40, 45, 47

*Garfield v. NDC Health Corp.*,
   466 F.3d 1255 (11th Cir. 2006) ..........................................................3

*In re Gen. Motors Co. Derivative Litig.*,
   No. 9627–VCG, 2015 WL 3958724 (Del. Ch. June 26, 2015), *aff'd*
   133 A.3d 971 (Del. 2016) ...........................................................27, 29

*In re Glob. Serv. Grp., LLC*,
   316 B.R. 451 (Bankr. S.D.N.Y. 2004) ..............................................38

*In re GMI Grp., Inc.*,
   606 B.R. 467 (Bankr. N.D. Ga. 2019) ..............................................40

*Gordon v. State*,
   359 S.E.2d 634 (Ga. 1987) ...............................................................18

*Hendry v. Wells*,
   650 S.E.2d 338 (Ga. Ct. App. 2007).................................................22

*Insight Tech., Inc. v. FreightCheck, LLC*,
   633 S.E.2d 373 (Ga. Ct. App. 2006)...........................................33, 34

*Jackson v. Astrue*,
　506 F.3d 1349 (11th Cir. 2007) ..........................................................49

*Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*,
　162 F.3d 1290 (11th Cir. 1998) ............................................................4

*Kimbrough v. State*,
　799 S.E.2d 229 (Ga. 2017) .................................................................15

*King v. Kovack Sec., Inc.*,
　No. 1:18-CV-4079, 2020 WL 11191805 (N.D. Ga. June 29, 2020) .................34

*In re Krieg*,
　No. 16-72067, 2018 WL 4381522 (Bankr. N.D. Ga. Sept. 13,
　2018) ...............................................................................................37, 38

*Kuchenmeister v. HealthPort Techs., LLC*,
　753 F. App'x 794 (11th Cir. 2018) ........................................................8

*Lawrie v. Ginn Dev. Co., LLC*,
　656 F. App'x 464 (11th Cir. 2016) ........................................................13

*Lechter v. Aprio, LLP*,
　565 F. Supp. 3d 1279 (N.D. Ga. 2021) .................................................34

*Ledford v. Peeples*,
　657 F.3d 1222 (11th Cir. 2011) ............................................................31

*In re Licking River Mining, LLC*,
　571 B.R. 241 (Bankr. E.D. Ky. 2017) ...................................................53

*Lockhart v. Columbian Chemicals Co.*,
　No. 1:07-CV-669, 2007 WL 9706424 (N.D. Ga. Aug. 31, 2007).....................17

*Lucky Cap. Mgmt., LLC v. Miller & Martin, PLLC*,
　741 F. App'x 612 (11th Cir. 2018) ........................................................35

*Magluta v. Samples*,
　256 F.3d 1282 (11th Cir. 2001) .............................................................4

*Marchand v. Barnhill*,
　212 A.3d 805 (Del. 2019) ...................................................................26

*Marnavi S.p.A. v. Keehan*,
　　900 F. Supp. 2d 377 (D. Del. 2012).....................................................59

*In re Mattress N More, Inc.*,
　　231 B.R. 104 (Bankr. N.D. Ga. 1998) ................................................58

*McCaughey v. Bank of Am., N.A.*,
　　279 F. App'x 794 (11th Cir. 2008) .....................................................12

*McCurley v. Wells Fargo Bank N.A.*,
　　No. 1:22-CV-04976-SEG, 2023 WL 9500010 (N.D. Ga. Dec. 29,
　　2023), *aff'd*, No. 24-10243, 2024 WL 3858914 (11th Cir. Aug. 19,
　　2024), *cert. denied*, 145 S. Ct. 1175 (2025) ......................................17

*In re McDonald's Corp. Stockholder Derivative Litig*,
　　289 A.3d 343 (Del. Ch. 2023) ............................................................27

*McDonough v. City of Homestead*,
　　No. 22-12637, 2023 WL 3035215 (11th Cir. Apr. 21, 2023).................5

*In re Medici*,
　　524 B.R. 902 (Bankr. N.D. Ga. 2014) ................................................47

*In re Menser*,
　　No. 18-65681, 2021 WL 4484894 (Bankr. N.D. Ga. Sept. 30,
　　2021) ......................................................................................37, 43, 47

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*,
　　583 U.S. 366 (2018)............................................................................47

*Miccosukee Tribe of Indians v. Cypress*,
　　814 F.3d 1202 (11th Cir. 2015) ..........................................................13

*Miller v. Lomax*,
　　596 S.E.2d 232 (Ga. Ct. App. 2004)...................................................55

*Mizzaro v. Home Depot, Inc.*,
　　544 F.3d 1230 (11th Cir. 2008) ............................................................9

*In re Moll Indus., Inc.*,
　　454 B.R. 574 (Bankr. D. Del. 2011) ..................................................59

*Mosier v. Callister, Nebeker & McCullough*,
546 F.3d 1271 (10th Cir. 2008) ........................................................10

*Najran Co. for Gen. Contracting & Trading v. Fleetwood Enters., Inc.*,
659 F. Supp. 1081 (S.D. Ga. 1986) ...................................................58

*In re NewStarcom Holdings Inc.*,
816 F. App'x 675 (3d Cir. 2020) ......................................................51

*Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*,
437 F.3d 1145 (11th Cir. 2006) ........................................................10

*Pender v. State*,
856 S.E.2d 302 (Ga. 2021) ...............................................................19

*In re Phar-Mor, Inc. Sec. Litig.*,
185 B.R. 497 (W.D. Pa. 1995), *aff'd sub nom. Coopers & Lybrand
v. Shapira*, 101 F.3d 689 (3d Cir. 1996).............................................41

*Phx. Airline Servs., Inc. v. Metro Airlines, Inc.*,
397 S.E.2d 699 (Ga. 1990) ...............................................................25

*Physician Specialists in Anesthesia, P.C. v. Wildmon*,
521 S.E.2d 358 (Ga. Ct. App. 1999)..................................................21

*In re PSN USA, Inc.*,
615 F. App'x 925 (11th Cir. 2015)......................................................42

*Ralls Corp. v. Huerfano River Wind*,
LLC, 27 F. Supp. 3d 1303 (N.D. Ga. 2014) ......................................48

*Rosen v. Protective Life Ins. Co.*,
No. 1:09-CV-3620, 2010 WL 2014657 (N.D. Ga. May 20, 2010) ......7

*In re Sabine Oil & Gas Corp.*,
547 B.R. 503 (Bankr. S.D.N.Y.), *aff'd*, 562 B.R. 211 (S.D.N.Y.
2016) ...................................................................................................40

*Sec'y of Labor v. Labbe*,
319 F. App'x 761 (11th Cir. 2008).....................................................49

*Smith v. State*,
913 S.E.2d 417 (Ga. Ct. App. 2025)..................................................19

*Spain v. Brown & Williamson Tobacco Corp.*,
   363 F.3d 1183 (11th Cir. 2004) ...........................................................55

*In re Stewart Fin. Co.*,
   No. 03-30277, 2007 WL 1704423 (Bankr. M.D. Ga. June 8, 2007).................36

*Stone v. Ritter*,
   911 A.2d 362 (Del. 2006) ...................................................................26

*Stull v. State*,
   196 S.E.2d 7 (Ga. 1973) .....................................................................17

*In re Tanner*,
   No. 22-53852-WLH, 2023 WL 6884714 (Bankr. N.D. Ga. Oct. 18,
   2023) ...............................................................................................36

*Taylor v. Powertel, Inc.*,
   551 S.E.2d 765 (Ga. Ct. App. 2001)...........................................11, 12

*Transatlantic, LLC v. Humana, Inc.*,
   666 F. App'x 788 (11th Cir. 2016)...................................................13

*Travelers Prop. Cas. Co. of Am. v. Clucis*,
   No. 1:20-CV-276, 2022 WL 4773493 (N.D. Ga. Sept. 30, 2022) ....................58

*Twitter, Inc. v. Taamneh*,
   598 U.S. 471 (2023)...........................................................................34

*United Scis., LLC v. Kellett*,
   890 S.E.2d 103 (Ga. Ct. App. 2023)...................................................31

*United States v. Brandon*,
   651 F. Supp. 323 (W.D. Va. 1987).......................................................9

*United States v. Ward*,
   486 F.3d 1212 (11th Cir. 2007) ..........................................................19

*Vennwest Glob. Techs. Inc. v. McGovern*,
   No. 1:20-CV-3386, 2021 WL 9698912 (N.D. Ga. June 8, 2021) ....................23

*In re Verso Techs., Inc.*,
   No. 1:09-CV-1293, 2010 WL 11598054 (N.D. Ga. June 30, 2010) .................30

*Vujin v. Galbut*,
   836 F. App'x 809 (11th Cir. 2020) ....................................................................13

*In re Webster*,
   629 B.R. 654 (Bankr. N.D. Ga. 2021) ...............................................................49

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
   792 F.3d 1313 (11th Cir. 2015) ......................................................................4, 5

*Wells Fargo Bank v. Crowly*,
   No. 1:13-CV-1427, 2014 WL 11370437 (N.D. Ga. Feb. 20, 2014)..................57

*Williams Gen. Corp. v. Stone*,
   614 S.E.2d 758 (Ga. 2005) ...............................................................................13

*Wylie v. Denton*,
   746 S.E.2d 689 (Ga. Ct. App. 2013)..................................................................13

*Wyndham Vacation Ownership, Inc. v. US Consumer Att'ys, P.A.*,
   No. 18-cv-81251, 2019 WL 7837887 (S.D. Fla. July 3, 2019) ........................56

*Yeyille v. Miami Dade Cty. Pub. Sch.*,
   643 F. App'x 882 (11th Cir. 2016) ......................................................................5

*Youree v. Recovery House of E. Tenn., LLC*,
   705 S.W.3d 193 (Tenn. 2025) ...........................................................................59

**Statutes**

11 U.S.C. § 101 ............................................................................................37, 53

11 U.S.C. § 108 ....................................................................................................11

11 U.S.C. § 541 ....................................................................................................10

11 U.S.C. § 544 ............................................................................................*passim*

11 U.S.C. § 546 ..............................................................................................49, 51

11 U.S.C. § 547 ........................................................................................35, 53, 65

11 U.S.C. § 548 ............................................................................................*passim*

11 U.S.C. § 550 ................................................................................35, 36, 56, 65

11 U.S.C. § 551 .................................................................................36, 65

11 U.S.C. § 574 .........................................................................................52

18 U.S.C. § 1343 .......................................................................................16

O.C.G.A. § 9-3-26 .....................................................................................12

O.C.G.A. § 9-3-32 .....................................................................................11

O.C.G.A. § 14-2-830 ......................................................................20, 23, 27

O.C.G.A. § 14-2-831 .................................................................................22

O.C.G.A. § 14-2-832 ..........................................................................20, 30

O.C.G.A. § 14-2-842 ..........................................................................20, 23

O.C.G.A. § 14-2-860 .................................................................................21

O.C.G.A. § 16-8-2 ..............................................................................16, 17

O.C.G.A. § 16-8-3 ..............................................................................16, 17

O.C.G.A. § 16-8-7 .....................................................................................16

O.C.G.A. § 16-10-70 .................................................................................16

O.C.G.A. § 16-10-94 .................................................................................16

O.C.G.A. § 16-14-4 .............................................................................14, 15

O.C.G.A. § 18-2-72 ...................................................................................37

O.C.G.A. § 18-2-74 .............................................................................*passim*

O.C.G.A. § 18-2-75 .............................................................................*passim*

O.C.G.A. § 18-2-77 ..........................................................................35, 56

O.C.G.A. § 18-2-79 ...................................................................................49

O.C.G.A. § 51-11-2 .....................................................................................8

**Other Authorities**

Fed. R. Civ. P. 8(a) .................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ..............................................................1, 3

Fed. R. Civ. P. 9(b) .................................................................*passim*

Fed. R. Civ. P. 21 ........................................................................28

L.R. 5.1B ....................................................................................62

L.R. 7.1D ....................................................................................62

Fed. R. Bank. P. 2004 ............................................................16, 17

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Wadud-Frady Defendants[1] submit this memorandum of law in support of their Motion to Dismiss the Complaint (Dkt. 1) and also join in full the arguments set forth in the contemporaneous motions to dismiss filed by the other defendants in this case.

## INTRODUCTION

Mountain Express Oil Company ("MEX") was an Alpharetta-based gasoline distributor and convenience store operator forced to file bankruptcy after its longtime collaborator, Blue Owl Capital Inc., suddenly decided, for its own business reasons, to stop participating in the transactions that drove MEX's growth over many years. Thereafter, MEX's lenders elected not proceed with a previously negotiated deal to cure defaults related to Blue Owl's decision. In the absence of cooperation, MEX's bankruptcy, first envisioned as a Chapter 11 reorganization, turned into a Chapter 7 liquidation with Plaintiff Janet Northrup appointed as trustee (the "Trustee")—and represented by the same counsel as MEX's lenders.

---

[1] The "Wadud-Frady Defendants" are: Turjo Wadud, individually and as Trustee of the 317 Irrevocable Trust and the Bayt Irrevocable Trust; Habiba Wadud; Lamar Frady, individually and as Trustee of the LKF Irrevocable Trust; Rita Frady; Illuminous Consulting, LLC; InDepth Services Company; Time and Water, LLC; 4Court Holdings, LLC; 4Court Consulting, LLC; 4Court Imaging, LLC; 4Court Leasing, LLC; 4Court Solutions, LLC; Adelphi, LLC; Adelphi Transport, LLC; Adelphi Energy Group, LLC; Adelphi Environmental Services; Adelphi Field Services, LLC; Golden Gallons, LLC; Red Mountain Fuel Transport, LLC; and AR Brinkley 2102 Hwy 49, LLC. All entities and persons are referred to individually in this memorandum by the short names assigned to them in the Complaint.

This lawsuit followed, with the Trustee naming MEX's co-CEOs and co-owners Turjo Wadud and Lamar Frady—unquestionably the two individuals with the greatest stake in MEX's success and who lost their investment valued at over $400 million at the end of 2022—as defendants, along with numerous of their affiliated entities and even their wives, on the implausible theory that they intentionally harmed their own company. Yet, after conducting eighteen months of extensive discovery in MEX's bankruptcy case, the Trustee and her counsel have mustered a fantasy novel—a prolix Complaint that disregards the reality of how MEX's business operated and how closely-held companies function generally.

But the Complaint is just as notable for what it does not allege: sufficient facts to establish plausible claims. The Trustee ignores several key facts to bring unfounded claims, including that: (1) Wadud and Frady received no salary from MEX as its owners; (2) many defendant entities, like the fuel transport companies, were necessary during the pandemic because MEX could not obtain reliable supply from third parties and to protect MEX from potential catastrophic personal injury and environmental liability, (3) MEX's chief restructuring officer (an independent fiduciary) reviewed the intercompany pricing and found no issues, (4) MEX owes the defendant entities collectively millions of dollars, and (5) MEX's lenders performed significant diligence and encouraged MEX to upsize its loan.

The Complaint should be dismissed as an improper shotgun pleading that does

not meet the basic requirements of Rule 8(a), let alone the heightened particularity demanded by Rule 9(b) that applies to most of the claims. Further, many claims either rely on, or incorporate by reference, allegations describing misconduct that purportedly occurred outside the statute of limitations. Pleading defects aside, all of the Trustee's 22 causes of action fail as a matter of law for independent reasons, as detailed below and as summarized in the Appendix to this memorandum of law. Dismissal with prejudice is warranted since the Trustee filed a deficient Complaint on the last day possible, with all the benefit of her counsel's knowledge from representing MEX's lenders and her own eighteen-month, subpoena-aided probe.

## LEGAL STANDARD

Under Rule 12(b)(6), a complaint without "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" must be dismissed. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "'[L]abels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice. *Chaparro*, 693 F.3d at 1337 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)).

A complaint alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To meet this standard, a plaintiff must make detailed allegations of the "who, what, when, where and how" to support fraud-based claims. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).

3

## **ARGUMENT**

## I.    **THE COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING.**

Shotgun pleadings "fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). As such—and to avoid "extended and largely aimless discovery"—the Eleventh Circuit regularly instructs courts to dismiss them. *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998) (criticizing complaints that leave the "responsibility of sorting things out" to courts).

A complaint should be dismissed as a shotgun pleading when it starts with "a long list of general allegations, most of which are immaterial to most of the claims for relief," then arbitrarily incorporates those "general allegations" by reference into its causes of action. *Id.*; *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (vacating and ordering the district court to strike complaint that incorporated by reference 146 paragraphs of "General Factual Allegations" into every count).

The Trustee's 219-page, 695-paragraph Complaint spends nearly 100 pages narrating a "Statement of Relevant Facts" before reaching the claims asserted against the 28 defendants here. Compl. ¶¶ 83–342. The causes of action then incorporate the bulk of the allegations preceding them. *See, e.g.*, *id.* ¶¶ 404, 419, 429 (incorporating the same paragraphs in Counts 3, 4, and 5), *id.* ¶¶ 490, 518, 532, 546, 556, 565, 575,

4

586, 594, 611, 620, 630, 642 (incorporating paragraphs 94–342, among others, into Counts 8 to 20); *id.* ¶¶ 518–641 (incorporating over 100 separate paragraphs making up Counts 9 to 16 into Count 6). This is paradigmatic shotgun pleading that justifies dismissal. *Yeyille v. Miami Dade Cty. Pub. Sch.*, 643 F. App'x 882, 884 (11th Cir. 2016) (affirming dismissal with prejudice of 403-paragraph complaint).

A shotgun pleading also makes allegations so ambiguous and disorganized that it is near impossible to discern which claims they purport to establish. *Anderson v. Dist. Bd. of Trs.*, 77 F.3d 364, 366 (11th Cir. 1996) (a defendant "is not expected to frame a responsive pleading" to a complaint if it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief"). The hallmark of shotgun pleading is asserting "multiple claims against multiple defendants" without identifying which defendants "are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1323; *see also McDonough v. City of Homestead*, No. 22-12637, 2023 WL 3035215, at *2 (11th Cir. Apr. 21, 2023) (dismissing shotgun complaint that "lumped" defendants together with "no specificity" as to actors or acts).

As one illustration (of many), consider the Trustee's claims against 4Court Imaging. The Complaint alleges vaguely that 4Court Imaging "was a member of a conspiracy that took actions underlying the Trustee's claims" and "performed business relating to the Trustee's claims." Compl. ¶¶ 43–44. There are no details

about which counts constitute "the Trustee's claims" or how 4Court Imaging, specifically, was involved in any (let alone all) of them. Later in the Complaint, 4Court Imaging is grouped with other entities as the "Related Entity Defendants"[2] but the Trustee concedes that "[f]urther investigation is needed to determine the extent to which the Related Entity Defendants and other entities owned, directly or indirectly, in whole or in part, by Frady or Wadud were created or operated with, funded by, or siphoned funds from MEX."[3] *Id.* ¶¶ 239–241. Finally, 4Court Imaging is not named in any causes of action; instead, Counts 9, 10, 11, 12, 13, 16 & 20 name the "Related Entity Defendants" without alleging any facts about 4Court Imaging. *Id.* ¶¶ 518–574, 594–610, 642–648. All said, wading through the convoluted assertions in the Complaint reveals ***no claims***, supported by ***any allegations***, against 4Court Imaging. The same is true for Adelphi, Adelphi Transport, Adelphi Environmental, 4Court Solutions, Golden Gallons, and Red Mountain Fuels Transport.

Another example is Counts 5 and 6 brought against "the RICO Defendants." *Id.* ¶¶ 429–479. Many allegations are so generic that they do not describe any facts

---

[2] The "Related Entity Defendants" are defined as InDepth; Illuminous; Adelphi Environmental; Adelphi Transport; 4Court Holdings; 4Court Solutions; 4Court Consulting; 4Court Imaging; 4Court Leasing; Time & Water; AR Brinkley; Golden Gallons; and Red Mountain Fuels Transport, among others. Compl. ¶ 239.

[3] Vested with MEX's documents—and having already taken Wadud's and Frady's depositions—it is hard to see what additional investigation could be warranted.

at all. *See, e.g.*, *id.* ¶ 439. The few that do describe conduct that can only be attributed to some defendants, but not others. *See, e.g.*, *id.* ¶¶ 430, 439–473, 475.

These are just two instances, but they exemplify how shotgun pleadings, like the Complaint, "lead to unnecessary and unchanneled discovery" and why they should be dismissed outright. *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997). The Court should not allow the Trustee to paper over wholly unsupported causes of action using ambiguity, lengthiness, and a barrage of conclusory assertions untethered from the claims. Alleging "a laundry list of claims" and hoping some will eke by without scrutiny is a tactic "disfavored—strongly—in our Circuit because it depletes precious judicial resources and obscures the viable issues to be litigated." *Rosen v. Protective Life Ins. Co.*, No. 1:09-CV-3620, 2010 WL 2014657, at *4 (N.D. Ga. May 20, 2010). And when the "laundry list" adds claims that demand heightened pleading under Rule 9(b)—as the Complaint does here by incorporating allegations purporting to show fraud into nearly every cause of action—the defects of shotgun pleading are only exacerbated. *See* Appendix (explaining which claims here are subject to Rule 9(b) pleading).

The takeaway is this: the Trustee cannot comply with Rule 8(a) or Rule 9(b) by simply guessing which defendants to name in this lawsuit, asserting inapplicable, ambiguous, and factually unsupported claims against them, and then forcing the Court and the defendants to unravel nearly 300 pages of disinformation and

purported "facts" to oppose them. This is particularly appropriate here since the Trustee spent the better part of two years pursuing discovery in the underlying bankruptcy, and leveraging her counsel's knowledge, before filing the Complaint.

## II.    THE TRUSTEE'S INTENTIONAL TORT AND RICO CLAIMS FAIL.

### A.    MEX necessarily consented to and participated in all of the alleged "misconduct" by Wadud and Frady.

The Trustee's intentional tort and crime-based claims are rooted in the fatally flawed theory that Wadud and Frady stole from, deceived, and defrauded MEX— the closely-held company that Wadud and Frady owned and controlled.[4] However, Wadud and Frady's ownership and control precludes such claims as a matter of law.

"[N]o tort can be committed against a person consenting thereto . . . ." O.C.G.A. § 51-11-2; *see also Birkett L. Williams Co. v. Smith*, 353 F.2d 60, 64 (5th Cir. 1965) (applying Georgia law) ("[O]ne cannot maintain an action for a wrong occasioned by an act to which he has consented."). Tellingly, the intentional tort claims alleged by the Trustee can only be maintained in the absence of consent. *See, e.g.*, *Blakey v. Victory Equip. Sales, Inc.*, 576 S.E.2d 288, 292 (Ga. Ct. App. 2002) ("conversion involves an unauthorized assumption and exercise of the right of ownership over personal property belonging to another"); *Kuchenmeister v. HealthPort Techs., LLC*, 753 F. App'x 794, 798–99 (11th Cir. 2018) (dismissing

---

[4] This argument applies to the claims for conversion, money had and received, violation of the Georgia RICO Act, and unjust enrichment (Counts 3, 4, 5 & 7).

unjust enrichment/money had and received claims where payments were voluntary).

This foundation of all the Trustee's intentional tort and RICO claims—that Wadud and Frady took from MEX without its consent—is untenable. Among other things, the Complaint acknowledges that in March 2020, Wadud and Frady became the co-CEOs of MEX, assumed 100% control over the company, and were the "two controlling shareholders." Compl. ¶¶ 2, 5, 96–97, 111. So, the actions of Wadud and Frady with respect to MEX and their states of mind necessarily are those of MEX. *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1254 (11th Cir. 2008) ("Corporations, of course, have no state of mind of their own. Instead, the scienter of their agents must be imputed to them."). The Complaint not only recognizes this reality but touts it. *See, e.g.*, Compl. ¶¶ 184–185 (alleging that when "MEX determined how much" to pay for certain services that means that "Wadud and Frady decided how much" to pay); *id.* ¶ 536 (alleging that "MEX" made certain payments with fraudulent intent because Wadud and Frady had such intent). Thus, MEX necessarily consented to the payments on which the Trustee's intentional tort and RICO claims rely because those payments were caused by MEX's owners and officers, Wadud and Frady.[5]

---

[5] That Wadud and Frady have "stolen" from MEX similarly makes little sense since MEX was a closely-held company owned by Wadud and Frady. "[W]hen a sole stockholder elects to remove corporate assets, his decision cannot be deemed a criminal deprivation of someone else[']s property rights. Instead, it is an exercise of rights that are lawfully within his control." *United States v. Brandon*, 651 F. Supp. 323, 327 (W.D. Va. 1987) (refusing "to extend the corporate legal fiction to mean

For the same reasons, even if the Trustee could state *prima facie* intentional tort or RICO claims against Wadud and Frady, they would be barred. *In pari delicto* is an equitable doctrine providing that a plaintiff who "participated in wrongdoing may not recover damages resulting from the wrongdoing." *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1151–52 (11th Cir. 2006) ("the defense of *in pari delicto* may be asserted against a bankruptcy trustee" in a suit under 11 U.S.C. § 541). *In pari delicto* is an affirmative defense, but it is properly applied on a motion to dismiss when the facts establishing the defense appear on the face of the complaint. *Id.* at 1156 (affirming dismissal of RICO claim).

At all times since March 2020, Wadud and Frady were either the sole or the 97% controlling shareholders of MEX, and they were the officers and directors with day-to-day control of the company. Compl. ¶¶ 5, 96–97, 111. MEX not only knew about and consented to Wadud's and Frady's actions but necessarily participated in the "misconduct" alleged by the Trustee. *See, e.g., id.* ¶ 536 (alleging MEX's fraudulent intent). The doctrine of *in pari delicto* therefore precludes MEX's (and the Trustee's) recovery. *Mosier v. Callister, Nebeker & McCullough*, 546 F.3d 1271, 1276 (10th Cir. 2008) (collecting cases where *in pari delicto* barred an action by a trustee against third parties who allegedly facilitated wrongful conduct by a debtor).

---

that a sole stockholder can be guilty of stealing, converting, or fraudulently taking corporate property over which he alone maintains control").

**B.    Each intentional tort claim fails for additional reasons.**

### 1.    *Conversion*

The Trustee's claim for "conversion" is based on MEX's purported payment of fees in connection with Sale-Leaseback Transactions. Compl. ¶ 418. The Trustee seeks to recover money damages in the amount of those fees. *Id.* In Georgia, however, there is "no conversion action for money damages for money, because generally, money is not subject to a civil action for conversion." *Taylor v. Powertel, Inc.*, 551 S.E.2d 765, 769 (Ga. Ct. App. 2001). "Where a plaintiff is not seeking to recover some specific money but instead seeks to recover a certain amount of money generally, it is not such a case for which a cause of action for conversion was intended." *City of Atlanta v. Hotels.com, L.P.*, 775 S.E.2d 276, 279 (Ga. Ct. App. 2015) (cleaned up). The Trustee's conversion claim therefore fails.

Additionally, conversion claims are subject to a four-year statute of limitations. *See* O.C.G.A. § 9-3-32. As such, any fees related to Sale-Leaseback Transactions that occurred before March 18, 2019, are also time-barred.[6]

### 2.    *Unjust enrichment and money had and received*

The Trustee asserts separate claims for "unjust enrichment" and "money had

---

[6] The Bankruptcy Code allows a trustee two years from the bankruptcy petition to bring a claim that was timely as of the filing. 11 U.S.C. § 108(a). In this case, MEX filed its petition on March 18, 2023. Compl. ¶ 1. This action was filed on March 17, 2025—one day within the two-year period. However, the Trustee's claims that were already untimely as of March 18, 2023, are barred by the statute of limitations.

and received," but they are functional equivalents. *McCaughey v. Bank of Am., N.A.*, 279 F. App'x 794, 797 (11th Cir. 2008) ("[Money had and received] is merely one form of action to recover damages based on unjust enrichment."). Indeed, in both counts, the Trustee seeks the same damages: the LBO Bonuses and fees related to Sale-Leaseback Transactions. Compl. ¶¶ 420–421.

To state a claim, a plaintiff must allege that the defendant received money belonging to the plaintiff that it "in equity and good conscience ought to refund." *Taylor*, 551 S.E.2d at 770. The Complaint reveals, however, that many of the fees from Sale-Leaseback Transactions were not paid by MEX at all, but rather, by third-party purchasers for services provided to MEX, including consulting services and equipment leases. Compl. ¶¶ 169, 174. As such, even if a refund were owed, it would not be due to MEX. Likewise, Wadud and Frady received the LBO Bonuses in connection with their assumption of their roles as co-CEOs of MEX. Compl. ¶¶ 97, 99–100. None of these payments gives rise to unjust enrichment claims.

Regardless, several payments—including the LBO Bonuses in 2018 and any fees from Sale-Leaseback Transactions before March 2019—were made more than four years ago and are therefore barred by the statute of limitations. *See* O.C.G.A. § 9-3-26; *Engram v. Engram*, 463 S.E.2d 12, 15 (Ga. 1995).

### 3.    *Georgia RICO claims*

In Count 5, the Trustee brings a claim under Georgia's RICO Act. RICO

authorizes civil penalties if a plaintiff can "plausibly allege" "racketeering activity," also known as a "predicate act," that proximately caused an injury to the plaintiff. *Wylie v. Denton*, 746 S.E.2d 689, 693 (Ga. Ct. App. 2013). When a predicate act sounds in fraud, as the crimes here do, then a plaintiff must satisfy Rule 9(b). *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 663 (11th Cir. 2015). Georgia's RICO Act is modeled after the federal statute, so Georgia courts rely on federal authority. *See Williams Gen. Corp. v. Stone*, 614 S.E.2d 758, 760 (Ga. 2005).

### i.    The RICO allegations do not satisfy Rule 9(b).

Courts may dismiss RICO claims outright, without analyzing predicate acts, if the claims are not pleaded plausibly or with particularity. *Miccosukee Tribe of Indians v. Cypress*, 814 F.3d 1202, 1212 (11th Cir. 2015) (affirming dismissal of RICO and conspiracy counts under Rule 9(b) despite 314-page complaint). Failure to satisfy Rules 8(a) and 9(b), and other defects arising from shotgun pleading, is the predominant reason the Eleventh Circuit routinely affirms the dismissal of RICO claims. *See, e.g.*, *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1217 (11th Cir. 2020) (courts will not "scour the allegations of a complaint to link unnamed defendants to particular acts of fraud without some reasoned and plausible way to do so").[7]

---

[7] *See, e.g.*, *Vujin v. Galbut*, 836 F. App'x 809, 818 (11th Cir. 2020); *Lawrie v. Ginn Dev. Co., LLC*, 656 F. App'x 464, 474 (11th Cir. 2016); *Transatlantic, LLC v. Humana, Inc.*, 666 F. App'x 788, 789 (11th Cir. 2016); *Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG*, 341 F. App'x 487, 494 (11th Cir. 2009);

The RICO claims do not come close to satisfying the pleading requirements, even though the Trustee conducted months of pre-litigation discovery and has all of MEX's records (including Wadud's, Frady's, and MEX's in-house and outside counsels' emails). The Complaint does not clarify which claims are brought under subsection (a) or (b) of the statute. Eliding the issue, the Trustee says only that "the RICO Defendants" engaged in racketeering activity by "improperly transferr[ing] or convert[ing] funds and other assets from MEX in violation of O.C.G.A. § 16-14-4(a) and (b)." Compl. ¶ 430. But subsections (a) and (b) are different:

- Subsection (a) makes it unlawful for "any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain . . . any interest in or control of any enterprise, real property, or personal property of any nature, including money";

- Subsection (b) prohibits "any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity."

O.C.G.A. § 16-14-4(a)-(b). Referring to "the RICO Defendants" as a group leaves the allegations fatally imprecise. There are no facts stating which defendants organized an "enterprise" or other illicit scheme (and are subject to subsection (a) claims), or which were associated with or employed by an "enterprise" (and are subject to subsection (b) claims). There are just generic, conclusory assertions that fail to give the defendants adequate notice of the claims asserted against them.

---

*Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007); *Am. United Life Ins. v. Martinez*, 480 F.3d 1043, 1070 (11th Cir. 2007).

*See, e.g.*, Compl. ¶ 457 ("The RICO Defendants' conduct was intentional, willful, and in bad faith.").[8] The Court should dismiss the RICO claims for failure to satisfy Rules 8(a) and 9(b).

### ii.    The Trustee fails to plead an "enterprise."

For claims under subsection (b), a plaintiff must allege an "enterprise." *Kimbrough v. State*, 799 S.E.2d 229, 233 (Ga. 2017). The Complaint alleges that "the RICO Defendants (along with their employees and agents)" are an "association in fact" for the "purpose of defrauding MEX or otherwise improperly and unlawfully obtaining MEX's funds." Compl. ¶ 431. Confusingly, the Complaint also says "the RICO Defendants were and are associated with the enterprise that defrauded MEX" as well. *Id.* ¶ 432. This is plainly insufficient.

"[A]n association-in-fact enterprise must have three 'structural features': (1) a 'purpose,' (2) 'relationships among those associated with the enterprise,' and (3) 'longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1067 (11th Cir. 2017) (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)). An association-in-fact enterprise

---

[8] The allegations rattle off RICO "buzz words" and echo the statute, but the lack of specificity makes most of the legal conclusions empty and incoherent. *See, e.g.*, Compl. ¶ 432 ("The RICO Defendants were and are associated with the enterprise that defrauded MEX or otherwise improperly and unlawfully obtained its funds and assets."); *id.* ¶ 437 ("In addition to the RICO Defendants, there are various persons and entities who are employed by or associated with the RICO Defendants who participated, directly or indirectly, in the enterprise's scheme.").

is not sufficiently pleaded if there are "no allegations suggesting the existence of an express agreement" or the defendants "acted as a continuing *unit*, and not merely independently." *Almanza*, 851 F.3d at 1068, 1074 (emphasis in original).

The Complaint does not offer any nonconclusory allegations that "the RICO Defendants" expressly agreed to "defraud[] MEX"—let alone specific facts about this supposed illicit agreement, like how, when, or which of "the RICO Defendants" manufactured the scheme or decided to participate in it. By omitting these details, the Trustee "simply asks [the Court] to speculate that ["the RICO Defendants"] decided at some point to pursue fraud" and to just presume they were all "involved in that decision." *Cisneros*, 972 F.3d at 1211–13. The Court should decline the Trustee's invitation to take part in this sort of mental gymnastics.

### iii.    The Trustee fails to sufficiently plead any predicate acts.

The Trustee asserts violations of six criminal statutes as predicate acts for RICO: tampering with evidence (O.C.G.A. § 16-10-94); perjury (O.C.G.A. § 16-10-70); theft by taking (O.C.G.A. § 16-8-2); theft by deception (O.C.G.A. § 16-8-3); wire fraud (18 U.S.C. § 1343); and theft by receiving stolen property (O.C.G.A. § 16-8-7). Compl. ¶¶ 438, 458(a)-(e). Each is inadequate as alleged.

***Tampering with evidence and perjury***. The Trustee alleges that during pre-litigation Rule 2004 discovery, Frady testified that he deleted "texts, emails, and other documents evidencing and reflecting the RICO Defendants unlawful acts" and

that Wadud and Frady gave "false testimony in their Rule 2004 examinations." Compl. ¶ 458(d)-(e). These one-sentence allegations fail to satisfy Rule 9(b), but even if taken as true, both fail because they do not allege any injury to MEX (nor could they since the MEX was already a defunct entity at that time). *See, e.g.*, *Am. Ins. Mgmt. Grp. v. Am. Nat'l Ins. Co.*, No. 1:05-CV-0352-JEC, 2007 WL 9710013, at *15 (N.D. Ga. Mar. 30, 2007) (dismissing RICO Act claims based on predicate act of perjury for failure to allege false sworn testimony injured plaintiffs).[9]

***Theft by taking and theft by deception***. Both theft by "taking" and theft by "deception" require allegations of a defendant's "intention of depriving" an owner of property. O.C.G.A. §§ 16-8-2, -3(a). The Trustee alleges Wadud and Frady took or stole funds from MEX. Compl. ¶ 458(a)-(b). As explained in Section II.A above, however, any theory premised on theft is implausible given that Wadud and Frady owned and controlled MEX and authorized its actions. *Stull v. State*, 196 S.E.2d 7, 9 (Ga. 1973) ("gravamen of the offense is the taking of the property of another ***against the will of such other***" (emphasis added)). Theft by deception also requires misrepresentation. *See, e.g.*, *McCurley v. Wells Fargo Bank N.A.*, No. 1:22-CV-04976-SEG, 2023 WL 9500010, at *5 (N.D. Ga. Dec. 29, 2023) (dismissing RICO

---

[9] Likewise, "tampering with evidence" independently fails as a predicate act because the Complaint does not allege that evidence was tampered with "to obstruct the prosecution or defense of any person." *Lockhart v. Columbian Chemicals Co.*, No. 1:07-CV-669, 2007 WL 9706424, at *5 (N.D. Ga. Aug. 31, 2007). Notably, too, the Trustee has access to all of MEX's and its in-house and outside counsels' emails.

claims based on theft by deception alleging "vague assertions that Wells Fargo committed fraud when it wrongfully sold certain properties"), *aff'd*, No. 24-10243, 2024 WL 3858914 (11th Cir. Aug. 19, 2024), *cert. denied*, 145 S. Ct. 1175 (2025). There are no false representations alleged since, for similar reasons, it is illogical to suggest that Wadud and Frady deceived themselves. *See, e.g.*, *Gordon v. State*, 359 S.E.2d 634, 635 (Ga. 1987) (rejecting "false invoices" theory as insufficient to support theft by taking or theft by deception even though the record showed evidence of "outrageous markup" for services rendered and suggested that the defendant "took advantage"). Funds that are "taken" are not considered stolen if the transfer was disclosed. Further, the transactions here were not only disclosed as between Frady, Wadud, and MEX; MEX also disclosed them to third parties. Compl. ¶¶ 294–296 (disclosure to the Lenders), *id.* ¶¶ 335–337 (disclosure to auditors).

**Wire Fraud**. Like theft by deception, the predicate act of "wire fraud" also requires a false representation of present fact. *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1343 (11th Cir. 2017) ("statement is not actionable as wire fraud" if it is not linked to a "misrepresentation as to some existing fact"). The Trustee alleges "the RICO Defendants" committed wire fraud by "divert[ing]" funds to "side companies" through various transactions. Compl. ¶ 448. But fatal to these claims, the Trustee

18

does not allege any false representations that either Wadud or Frady made to MEX.[10]

***Theft by receiving stolen property***. The predicate act of "theft by receiving stolen property," must allege how stolen property was received, disposed of, or retained, including that the defendant did not intend to restore the property to its rightful owner, *Smith v. State*, 913 S.E.2d 417, 420 (Ga. Ct. App. 2025), and "that the goods [were] stolen by some person other than the accused," *Bonner v. State*, 794 S.E.2d 186, 189 (Ga. Ct. App. 2016). Again, the notion that Wadud and Frady "stole" from MEX is defective, but the theory is further flawed because the Trustee contends that Wadud and Frady are also the principal thieves, which renders a "theft by receiving" claim unavailable under Georgia law. *Pender v. State*, 856 S.E.2d 302, 310–11 (Ga. 2021) (a jury cannot find the defendant guilty of both theft by taking and theft by receiving based on the same property).

## III.    THE TRUSTEE'S FIDUCIARY DUTY-BASED CLAIMS FAIL.

### A.    The breach of fiduciary and statutory duty claims fail.

Count 1 brings claims against Wadud and Frady for breach of fiduciary duty arising from their roles as officers and directors of MEX. Compl. ¶¶ 343–388. Three elements must be alleged to state this claim: "(1) the existence of a fiduciary duty;

---

[10] "Mail fraud" is not listed in the Complaint as a predicate act, but the allegations mention "interstate mail" several times. *See, e.g.*, Compl. ¶ 455. Regardless, a claim based on mail fraud would fail for the same reasons as wire fraud. *See United States v. Ward*, 486 F.3d 1212, 1221 (11th Cir. 2007) ("Aside from the means by which a fraud is effectuated, the elements of mail fraud and wire fraud are identical.").

(2) breach of that duty; and (3) damage proximately caused by the breach." *Bienert v. Dickerson*, 624 S.E.2d 245, 248 (Ga. Ct. App. 2005). Similarly, Count 8 brings claims under the Georgia statutes that govern the conduct of directors and officers. Compl. ¶¶ 490–517. These statutes provide that directors and officers must perform their duties "in good faith and with the degree of care an ordinarily prudent person in a like position would exercise under similar circumstances." O.C.G.A. §§ 14-2-830(a) (directors); -842(a) (officers). Both counts must be pleaded with particularity under Rule 9(b) where, as here, they rely on the same factual allegations that purport to support fraud claims. *In re Friedman's Inc.*, 385 B.R. 381, 434 (S.D. Ga. 2008) (dismissing fraud-based fiduciary duty claims under Rule 9(b)), *vacated in part on other grounds*, 394 B.R. 623 (S.D. Ga. 2008).[11]

To support her claims, the Trustee cites O.C.G.A. §§ 14-2-832(a)[12] and 14-2-640(c)[13] and alleges Wadud and Frady "pushed MEX deeper into insolvency" by

---

[11] The Trustee contends that Wadud and Frady breached their duties by making transactions for their own benefit at MEX's expense. Compl. ¶ 495. These are the same allegations as the fraudulent transfer claims. *Id.* ¶¶ 534–545, 587–593.

[12] This provision "makes a director who voted for an unlawful distribution liable to the corporation for any amount exceeding that which should have been paid out." *Deal v. Tugalo Gas Co., Inc.*, 991 F.3d 1313, 1324 (11th Cir. 2021).

[13] This provision provides: "No distribution may be made if, after giving it effect: (1) [t]he corporation would not be able to pay its debts as they become due in the usual course of business; or (2) [t]he corporation's total assets would be less than the sum of its total liabilities plus (unless the articles of incorporation permit otherwise) the amount that would be needed, if the corporation were to be dissolved at the time

assenting to shareholder distributions to themselves, and paying fees to InDepth, Illuminous, LTE Capital, 4Court Consulting, 4Court Leasing, and 4Court Holdings. Compl. ¶¶ 495–500. She also alleges Wadud and Frady engaged in "conflicting interest transactions," as defined by O.C.G.A. § 14-2-860(2), and violated their duties of good faith and care by failing to "establish, implement, and maintain internal controls" and "perform proper due diligence," including having "professional valuation or appraisal performed" with respect to property acquisitions. Compl. ¶¶ 495–500. These claims fail for several reasons.

### 1.    *Conduct alleged before March 2020 is irrelevant or barred.*

The Complaint alleges Wadud and Frady served as officers and directors of MEX only from "March 2020 until MEX ceased operations in 2023." Compl. ¶¶ 344, 491. Wadud and Frady did not owe fiduciary duties to MEX before March 2020 because they were only employees, not directors or officers. *Physician Specialists in Anesthesia, P.C. v. Wildmon*, 521 S.E.2d 358, 360 (Ga. Ct. App. 1999) ("employer-employee relationship does not typically create a principal-agent relationship" giving rise to fiduciary duties). Claims relying on such alleged conduct must be dismissed, including: (1) LBO Bonuses in 2018, Compl. ¶ 92; (2) fees paid as part of Sale-Leaseback Transactions in 2018 and early 2019 (prior to Wadud's

---

of the distribution, to satisfy the preferential rights upon dissolution of shareholders whose preferential rights are superior to those receiving the distribution."

and Frady's ownership), *id.* ¶ 152(i)-(iv); and (3) fees paid as part of Sale-Leaseback Transactions in March and September 2019, *id.* ¶ 152(v)-(vi).

Additionally, claims before March 2019 fail because they are time barred. Because the Trustee's allegations sound in fraud, a four-year statute of limitation applies. *See Hendry v. Wells*, 650 S.E.2d 338 (Ga. Ct. App. 2007); *see also* O.C.G.A. § 14-2-831(d). Thus, the Trustee cannot rely on conduct that allegedly occurred more than four years before March 18, 2023, when MEX filed for bankruptcy. *Cf.* Compl. ¶ 344 (recognizing the cutoff date for the bankruptcy claims as March 18, 2019).

### 2.    *Wadud and Frady are shielded by the business judgment rule.*

Under Georgia common law, the business judgment rule provides that tort "claims against officers and directors for their business decisions that sound in ordinary negligence" are generally precluded, "except to the extent that those decisions are shown to have been made without deliberation, without the requisite diligence to ascertain and assess the facts and circumstances upon which the decisions are based, or in bad faith." *FDIC v. Loudermilk*, 761 S.E.2d 332, 338 (Ga. 2014) (recognizing rebuttable presumption of good faith and ordinary care).

In 2017, after *Loudermilk*, the Georgia General Assembly codified and heightened the common law rule—making the presumption more difficult to rebut— by calling for "gross negligence" or "gross deviation" from the standard of care:

> There shall be a presumption that the process a director [or
> officer] followed in arriving at decisions was done in good

> faith and that such director [or officer] has exercised ordinary
> care; provided, however, that this presumption may be
> rebutted by evidence that such process constitutes gross
> negligence by being a gross deviation of the standard of care
> of a director in a like position under similar circumstances.

O.C.G.A. §§ 14-2-830(c), -842(c); *see also Vennwest Glob. Techs. Inc. v.*

*McGovern*, No. 1:20-CV-3386, 2021 WL 9698912, at *5 (N.D. Ga. June 8, 2021).

The business decisions at issue here (entering into and approving contracts
and payments, including sales and leases) are squarely within Wadud's and Frady's
business judgment. The good faith presumption thus applies and precludes
liability—even if the decisions, in hindsight, were ill-fated. *In re Bal Harbour Club,*
*Inc.*, 316 F.3d 1192, 1194–95 (11th Cir. 2003) (the business judgment rule stops "a
factfinder, in hindsight, from second guessing the decisions of directors . . . [absent]
a showing of abuse of discretion, fraud, bad faith, or illegality").

The Complaint fails to rebut this statutory presumption. The Trustee alleges
"bad faith" just once with respect to Wadud and Frady (referencing the Time &
Water Transfers and AR Brinkley Transfers), but the assertion is conclusory. Compl.
¶ 235. There are no allegations of bad faith related to Sale-Leaseback Transactions
or other purported misconduct. And the Trustee's lone nod to "gross negligence"
and "gross deviation from the standard of care"—aimed at all acts "generally
described throughout this Complaint"—is also conclusory. *Id.* ¶¶ 512–514. Even on
a motion to dismiss, the Court need not accept these assertions as true. *Am. Dental*

*Assoc. v. Cigna Corp.*, 605 F.3d 1283, at 1293 (11th Cir. 2010) (the court's "first task is to eliminate any allegations in Plaintiffs' complaint that are merely legal conclusions").

Another crippling deficiency is that the Complaint lacks allegations stating when Wadud and Frady became aware that their decisions were purportedly unlawful. And there is no suggestion the transactions at issue were not plainly disclosed to MEX. To the contrary, the Trustee alleges that: MEX underwent financial audits in 2018 and 2019, Compl. ¶¶ 335, 337; MEX always had a Chief Financial Officer ("CFO") in place from 2019 until 2022, *id.* ¶ 509; MEX used outside counsel in its transactions, *id.* ¶¶ 116, 145; and, after December 31, 2021, MEX's board included Frady, Wadud, and Sheiker, *id.* ¶¶ 130–131, 492.

At best, a generous reading supports an inference that Wadud and Frady were on notice of concerns regarding the fees related to Sale-Leaseback Transactions and other business decisions as of August 2, 2022, the date that 3% MEX co-owner West Hill Ranch allegedly sent a letter detailing those concerns to Wadud and Frady. *Id.* ¶¶ 276–278. But even this letter does support the allegation that Wadud or Frady "knew of the unlawfulness of those conveyances, assignments, and transfers" and made them anyway from August 2022 onward. *Id.* ¶¶ 278, 516. Far from it, the Trustee claims that after receiving the West Hill Ranch letter, in August 2022, Wadud and Frady hired Gina Zamarelli as MEX's new CFO and notified Blue Owl

that MEX "would materially reduce, if not altogether stop, the Sale-Leaseback Transactions" no later than October 2022. *Id.* ¶¶ 279, 287. In any event, ***all*** of the Time & Water Transfers and AR Brinkley Transfers purported to be in "bad faith" occurred before August 2022. *Id.* ¶¶ 2, 223–235.

Without adequate allegations of "bad faith" or "gross negligence" by Wadud or Frady, the myriad assertions in the Complaint that their business judgment was improper or somehow worsened MEX's financial position—made entirely with the benefit of hindsight—are insufficient to rebut the presumption of good faith.

### 3. *The Trustee fails to allege breach of a "duty of oversight."*

The Trustee claims Wadud and Frady "were responsible for locating and conducting due diligence on properties in their roles as MEX co-CEOs," but "did little, if any, due diligence" on properties as part of Sale-Leaseback Transactions, then "failed to integrate" store-level data into a "centralized system that would allow them (or anyone at MEX) to review and analyze MEX's retail business to determine whether it was profitable and sustainable for the long term." Compl. ¶¶ 4–5, 100, 133–139. She tries to fold these assertions into her claims for breach of fiduciary and statutory duty by alleging Wadud and Frady "had a duty to conduct adequate and appropriate due diligence" before binding MEX. *Id.* ¶¶ 136–137.

Under Georgia law, officers and directors owe fiduciary duties of loyalty, good faith, and fair dealing toward the corporation. *Phx. Airline Servs., Inc. v. Metro*

*Airlines, Inc.*, 397 S.E.2d 699, 703 (Ga. 1990). Georgia does not impose an independent of "duty of oversight" or a duty to perform due diligence or monitor. Instead, the Trustee effectively brings a "*Caremark* claim"—a theory of liability for breach of fiduciary duty recognized, to a limited extent, under Delaware law that emphasizes a duty to act in good faith and to be reasonably informed about the corporation's operations and risks. *See In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996) (establishing the standard for director oversight liability). This duty has never been recognized or adopted in Georgia law, which unlike Delaware law, relies on statutes to define the duties of officers and directors.

Even if a *Caremark* theory of liability presented a viable claim under Georgia law (it does not), the Complaint falls short of stating such a claim. A *Caremark* claim requires allegations that "the directors utterly failed to implement any reporting or information systems or controls, or . . . having implemented such systems or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006). This requires allegations of "bad faith—'the state of mind traditionally used to define the mindset of a disloyal director.'" *Marchand v. Barnhill*, 212 A.3d 805, 820–21 (Del. 2019). In other words, *Caremark* liability exists only when a board has "made no effort . . . to put a board-level system of monitoring and reporting in place." *Id.* at 821. Allegations that board-

level reporting could have been "better" or, in hindsight, proved ineffective will fail in the absence of facts suggesting bad faith. *In re Gen. Motors Co. Derivative Litig.*, No. 9627–VCG, 2015 WL 3958724, at *14–15 (Del. Ch. June 26, 2015), *aff'd* 133 A.3d 971 (Del. 2016) (This exception is consistent with Georgia's business judgment rule. *In re Edgewood Food Mart, Inc.*, 666 B.R. 418, 432 (Bankr. N.D. Ga. 2024) (the statute requires "gross negligence (or bad faith) before liability may be imposed").

The allegations in the Complaint belie that Wadud's and Frady's actions were "utter" failures or that they made no efforts whatsoever, and, in fact, show that Wadud and Frady made good faith efforts to grow MEX's business in an appropriate manner. *First*, MEX had a CFO from 2019 through 2022. Compl. ¶ 506. Wadud and Frady were permitted to—and did—rely on the CFOs to perform MEX's financial and accounting functions and to discharge their duties. O.C.G.A. § 14-2-830(b)(1) ("In performing his or her duties a director may rely upon . . . [o]ther officers, employees, or agents of the corporation whom the director reasonably believed to be reliable and competent in the functions performed . . . ."); *In re McDonald's Corp. Stockholder Derivative Litig*, 289 A.3d 343, 367 (Del. Ch. 2023) ("If an officer was not providing adequate oversight, but the directors did not have reason to know that, then the board could have relied on the officer in good faith."). The Trustee alleges that MEX's CFOs breached their statutory duties, too, but does not plead that either

Frady or Wadud were aware that these officers had breached their duties, including the date and circumstances under which they became aware.[14] The most to be inferred is that Wadud and Frady were on notice of some oversight issues related to the CFOs' shortcomings beginning in August 2022, when Ms. Zamarelli was hired to serve as CFO but allegedly resigned. Compl. ¶¶ 279–282. The Complaint offers no support to suggest that Wadud or Frady had any earlier knowledge of her concerns (or concerns of others, like MEX's auditors). And Ms. Zamarelli's deposition testimony, which the Trustee broadly excerpts and offers as "facts" to support this claim, is nothing but series of leading questions formulated as legal conclusions followed by "Yes" or "Correct." *Id.* ¶¶ 6, 283. This is hardly the detailed factual pleading required to satisfy Rule 9(b).

Critically, however, once concerns were raised, Wadud and Frady employed Ms. Zamarelli as a consultant (along with Grant Thornton) ***to remedy*** concerns over decentralized data. In other words, the very "control failures" she "uncovered" are what Ms. Zamarelli was hired by Wadud and Frady to oversee.

*Second*, while the Trustee alleges that Wadud and Frady failed to integrate store-level data and "other" data into some centralized system, there are no

---

[14] MEX's former CFOs, John Scott and Vic Lacy, were sued too, but the Trustee moved to dismiss them as defendants under Rule 21 *with prejudice*, without a settlement. *See* Dkt. 58. This further supports that the Trustee's lack of "control" and "oversight" arguments are meritless.

allegations that the board did not receive or relay specific types of information. And there are no allegations suggesting the board "utterly failed" to try to create information and reporting systems. *GM*, 2015 WL 3958724, at *14. Once again, given the extensive pre-litigation discovery, the lack of allegations that Wadud and Frady made any of these purported missteps in bad faith is damning.

*Third*, the Trustee alleges that MEX underwent financial audits in 2018 and 2019. Compl. ¶¶ 335, 337. The Trustee ignores that following audits in 2020 and 2021, MEX's financial statements were provided to the Lenders, and MEX secured a Credit Agreement in March 2020. *Id.* ¶¶ 294–296. Tellingly, the Trustee alleges no "red flags" arising from these audits (which the Trustee and counsel would have reviewed). As co-CEOs, Wadud and Frady reasonably expected that any irregularities of concern would be raised by the Lenders; they were not, however, and the Lenders approved hundreds of millions of dollars of loans multiple times based on these audits. *Id.*

Wadud and Frady reasonably relied on external oversight through MEX's CFOs, employees, and consultants, as well as independent audits, to ensure that the company's financial reporting was sufficient. Because the Complaint shows that MEX had monitoring and oversight measures in place—and that Wadud and Frady took remedial actions based on those measures—the Trustee fails to plead the wholesale dereliction of duties and bad faith required to bring a *Caremark* claim.

29

#### 4.     *Wadud and Frady are exculpated from duty of care violations.*

Pursuant to Section XIV(a) of MEX's Amended Articles of Incorporation, Wadud and Frady have limited liability "[t]o the fullest extent permitted by the Georgia corporation Code" and shall not "be liable to the corporation or to the shareholders of the corporation for monetary damages for breach of duty of care as director or for breach of any other duty as director[.]" **Exhibit 1**.[15]

Though this provision "does not eliminate or limit the liability of a director: (i) for any appropriation in violation of his duties, of any business opportunity of the corporation; (ii) for acts or omissions not in good faith or which involve intentional misconduct or knowing violation of the law; (iii) for any of the types of liability set forth in O.C.G.A. § 14-2-832; [or] (iv) for any transaction from which the director derived an improper personal benefit," Wadud and Frady are not subject to this exception for the very same reasons noted above that the Trustee fails to state a claim for these causes of action. Put simply, the Complaint does not allege adequate facts to trigger the exceptions here, and Wadud and Frady are therefore exculpated from liability for "duty of care" violations.

---

[15] The Amended Articles of Incorporation are public records that the Court may properly consider without converting a motion to dismiss into a motion for summary judgment. *In re Verso Techs., Inc.*, No. 1:09-CV-1293, 2010 WL 11598054, at *16 n.15 (N.D. Ga. June 30, 2010) (citing *Universal Express, Inc. v. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006)) (considering articles of incorporation on motion to dismiss).

**B.    The aiding and abetting breach of fiduciary duty claims fail.**

Count 2 alleges that 4Court Holdings, 4Court Consulting, 4Court Leasing, Time & Water, Illuminous, InDepth, AR Brinkley, R. Frady, and Habiba (the "Count 2 Defendants") "[p]rocured" breaches of fiduciary and statutory duties from Wadud and Frady by "receiving funds to which they were not entitled . . . purposefully, with malice, and with the intent to injure MEX." Compl. ¶¶ 397–398.

The aiding and abetting claim fails at the threshold because Wadud and Frady did not breach their duties. *Ledford v. Peeples*, 657 F.3d 1222, 1260 (11th Cir. 2011) ("[B]reaches have to have occurred; otherwise, [one] cannot be held liable for aiding and abetting."). But the Trustee also fails to plead the other elements of this claim.

**1.    *"Improper conduct or wrongful action without privilege"***

A plaintiff must first allege that a defendant "procured" a breach of fiduciary duty "through improper action or wrongful conduct and without privilege." *Cottrell v. Smith*, 788 S.E.2d 772, 786 (Ga. 2016). "Without privilege" means "the defendant was an intermeddler or 'stranger' to the [contract or] business relationship at issue." *United Scis., LLC v. Kellett*, 890 S.E.2d 103, 108 (Ga. Ct. App. 2023).

The Complaint generically asserts that the Count 2 Defendants "were a stranger to the fiduciary relationship between MEX (on the one hand) and Frady and Wadud (on the other)" and "facilitated, directed, assisted, encouraged, and procured" a breach through "improper action and/or wrongful conduct." Compl. ¶¶ 394–395.

31

The Court should ignore this legal conclusion. The facts underlying this claim relate primarily to fees 4Court Consulting, Illuminous, and InDepth received from Sale-Leaseback Transactions and "other" transactions, and payments 4Court Leasing received for lease rates. *Id.* ¶ 396(i), (ii), (v). The Trustee alleges "MEX did not have a contract with 4Court Consulting," but if MEX did, then those contractual obligations are fraudulent. *Id.* ¶ 170. The Trustee then alleges on "information and belief" that "in at least some cases, MEX did not have a contract with 4Court Consulting." *Id.* ¶ 180. These assertions are inconsistent and cannot show 4Court Consulting was a "stranger" to the Sale-Leaseback Transactions. Further, there are no allegations stating whether 4Court Holdings, 4Court Leasing, or Time & Water had contracts in place entitling them to such fees. But, as discussed below, MEX did not pay fees to these entities—they were paid by the buyers as part of disclosed contracts to purchase various properties. Likewise, the Trustee claims Time & Water "caused" MEX to transfer its "contracts, contractual rights, real properties, and other assets" to Time & Water, *id.* ¶ 396(iv), and that AR Brinkley "[p]rocured" Wadud and Frady to assign MEX's rights to purchase certain properties to AR Brinkley, *id.* ¶ 396(vii). Even if true, these transfers would have been the subject of agreements to which Time & Water and AR Brinkley were parties. Without specific allegations as to each transaction stating that there was no contract with a defendant, such that the benefit was one to which the defendant was not entitled, there can be no liability

32

for aiding and abetting. *Insight Tech., Inc. v. FreightCheck, LLC*, 633 S.E.2d 373, 378 (Ga. Ct. App. 2006) (parties to a contract "have a property right therein with which a third party cannot interfere without legal justification or privilege").

Relatedly, to "procure" a breach "does not require the lending of assistance in the actual perpetration of the wrong," but does require "advice, counsel, persuasion, or command . . . in procuring any person to commit an actionable wrong." *Angel Oak Mortg. Sols. LLC v. Mastronardi*, 593 F. Supp. 3d 1234, 1243 (N.D. Ga. 2022).

The Trustee tries to rely on alleged inactions of 4Court Holdings, like not seeking external review of certain transactions, and the Count 2 Defendants' inaction, generally, by supposedly turning a blind eye to "conflicted" transactions. Compl. ¶ 396(iii), (vi). These allegations are insufficient because the key to aiding and abetting is ***inducing*** the wrongdoer to improperly act. *Curry v. TD Ameritrade, Inc.*, No. 1:14-CV-1361, 2015 WL 11251449, at *15 (N.D. Ga. June 30, 2015 (dismissing claims that the defendants "disregarded evidence of wrongdoing [and] failed to independently verify account information" since "assisting is not enough").

The Trustee claims R. Frady and Habiba were "active participant[s]" in MEX's and "other" entities' operations and "coordinat[ed] with" their husbands "to try and hide" funds in their family trusts. Compl. ¶¶ 392, 396(v). The progression from premise to conclusion here is a logical leap at best; an unsupported contention of involvement fails to sufficiently state how either R. Frady or Habiba procured a

breach and, obviously, being married to a defendant is not enough. *Cf. Twitter, Inc. v. Taamneh*, 598 U.S. 471, 489 (2023) (noting "courts have long recognized the need to cabin aiding-and-abetting liability to cases of truly culpable conduct").

The superficial allegations in this claim reveal that the Trustee has not actually described any improper ***conduct*** or wrongful ***actions*** by any Count 2 Defendant— let alone facts showing the "advice, counsel, persuasion, or command" they used to procure a breach from Frady or Wadud. *Lechter v. Aprio, LLP*, 565 F. Supp. 3d 1279, 1338 (N.D. Ga. 2021) (dismissing claim as "formulaic recitations" where plaintiff did not explain *how* defendants "procured" breach of fiduciary duties).

### 2.    *"Malice or intent to injure"*

An aiding and abetting claim also requires allegations that the defendant "acted purposely and with malice and the intent to injure" and with "knowledge that the primary wrongdoer owed the plaintiff a fiduciary duty." *Cottrell*, 788 S.E.2d at 786. With "malice" does not denote "ill will or animosity" but rather "unauthorized" interference "without legal jurisdiction or excuse." *King v. Kovack Sec., Inc.*, No. 1:18-CV-4079, 2020 WL 11191805, at *7 (N.D. Ga. June 29, 2020); *FreightCheck*, 633 S.E.2d at 379 n.13 ("malicious" acts are those perpetrated with "knowledge of plaintiff's rights, and . . . intent to interfere therewith").

The Trustee's one-sentence legal conclusion that the Count 2 Defendants acted "purposely, with malice, and with the intent to injure MEX" falls far short of

this burden. Compl. ¶ 398. In particular, as to R. Frady and Habiba, the allegations do not even support an inference that either knew about the alleged funds transfers at issue at all (or their origin). *Lucky Cap. Mgmt., LLC v. Miller & Martin, PLLC*, 741 F. App'x 612, 623 (11th Cir. 2018) (reasoning one cannot be found to have acted with malice and intent to injure when there was no evidence of awareness of misappropriation). The Trustee's aiding and abetting claims must be dismissed.

## IV.    THE TRUSTEE'S AVOIDANCE CLAIMS FAIL.

Georgia's Uniform Voidable Transactions Act ("UVTA") allows a creditor, in certain circumstances, to avoid or set aside a debtor's transfer of funds or other property, and to recover the value from the recipient, if the transfer either was made "[w]ith actual intent to hinder, delay, or defraud" creditors (an "actual fraudulent" transfer) or was made without the debtor receiving "reasonably equivalent value" and while the debtor was insolvent (a "constructive fraudulent" transfer). O.C.G.A. §§ 18-2-74, -75, -77. Under the Bankruptcy Code, a trustee has standing to pursue its creditors' UVTA avoidance claims. *See* 11 U.S.C. § 544(b). A trustee may also pursue similar fraudulent transfer claims under the Bankruptcy Code to avoid and recover certain transfers. *See* 11 U.S.C. §§ 548, 550. Finally, a trustee may avoid and recover so-called "preferences"—payments a debtor made to creditors in a limited time period before the bankruptcy was filed. *See* 11 U.S.C. §§ 547, 550.

In a dozen counts, the Complaint asserts all of these claims against different

groups of defendants: the Trustee contends various payments by MEX constituted both actual and constructive fraudulent transfers (Counts 9, 10, 11, 12, 14 & 15), and that certain payments constituted preferences (Count 13). The Trustee also contends that, as a purported "creditor" of the Waduds, the Waduds' recent transfer of certain real estate is "fraudulent" as to the Trustee (Counts 17, 18 & 19). Lastly, the Trustee advances a novel—and legally incorrect—theory that she can bring a claim on behalf of MEX's creditors for "conspiracy to violate the UVTA" (Count 6). For numerous overlapping reasons, all of the Trustee's claims fail.[16]

### A.    The "constructive fraudulent" transfer claims fail.

A UVTA or Bankruptcy Code claim based on a "constructively fraudulent" transfer must allege, for each transfer, that MEX was insolvent when it made the transfer (or became insolvent thereby) and did not receive "reasonably equivalent value" in exchange. *In re Stewart Fin. Co.*, No. 03-30277, 2007 WL 1704423, at *8 (Bankr. M.D. Ga. June 8, 2007) (dismissing claims under 11 U.S.C. § 548(a)(1)(B) and O.C.G.A. § 18-2-74(a)(2)). The Trustee fails to adequately plead these elements.

### 1.    *"Insolvency"*

The Trustee must "allege enough facts to raise a plausible claim that [MEX]

---

[16] Counts 16 and 20—which seek to recover the value of and to "preserve" allegedly voidable transfers under 11 U.S.C. §§ 550 and 551—turn entirely on viable underlying avoidance claims and therefore fail with those claims. *See In re Tanner*, No. 22-53852-WLH, 2023 WL 6884714, at *4 (Bankr. N.D. Ga. Oct. 18, 2023).

was insolvent *on the date of each transfer*." *In re Menser*, No. 18-65681, 2021 WL 4484894, at *5 (Bankr. N.D. Ga. Sept. 30, 2021) (emphasis added); *see also* 11 U.S.C. § 101(32); O.C.G.A. § 18-2-72 ("A debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets."). Generalized allegations are deficient since "insolvency on the date of the alleged fraudulent transfer is the critical issue and proof of insolvency on any other date is insufficient." *In re Dunston*, 566 B.R. 624, 638 (Bankr. S.D. Ga. 2017) (refusing to infer from debtor's schedules and decline in income that debtor was insolvent at the time of transfers that took place between ten and fifteen months before the bankruptcy filing); *see also, e.g.*, *In re Krieg*, No. 16-72067, 2018 WL 4381522, at *11 (Bankr. N.D. Ga. Sept. 13, 2018) (rejecting insolvency argument premised on "an inference" that because debtor was insolvent on the petition date and stated her assets had not changed substantially, the debtor also must have been insolvent on the date a transfer occurred over a year and a half earlier).

The Trustee alleges MEX was insolvent on December 31, 2018. Compl. ¶ 335. But there are no plausible allegations of insolvency on any subsequent date, including when each of the allegedly fraudulent transfers took place; the Complaint offers only vague allegations that "MEX's financial condition worsened after 2018." *Id.* ¶¶ 335–336. This is inadequate considering that the Trustee concedes in the very next paragraph that MEX was solvent on December 31, 2019. *Id.* ¶ 337. The Trustee

tries to undermine MEX's financial statements showing solvency by criticizing the value of MEX's fuel-supply agreements. *Id.* n.20.[17] But speculation over the December 2019 financial statements cannot overcome that the Trustee indisputably does not allege insolvency on the date of the specific transfers at issue.

The implausibility of the suggestion that MEX was insolvent on the later dates of each transfer is glaring. Almost all the alleged fraudulent transfers occurred after 2019; yet the Trustee fails to provide any details whatsoever to plead insolvency at that time. To the contrary, the Complaint alleges that MEX took out a $70 million loan in March 2020. Compl. ¶ 338. The Trustee's counsel, who represents the Lenders, certainly did not believe MEX was insolvent then. *Id.* ¶¶ 294–296. Banks do not and cannot make loans to insolvent entities. *See, e.g.*, *In re Glob. Serv. Grp., LLC*, 316 B.R. 451, 459 (Bankr. S.D.N.Y. 2004) (noting it is "bad banking" to make a loan if the bank knows it "will not be repaid"). Indeed, the Trustee conveniently ignores the 2020 and 2021 audits in her possession—which were provided to the Lenders—that necessarily show MEX was solvent at those times. Without facts or numbers to support them, the Trustee's oversimplified allegations that MEX did not

---

[17] By the Trustee's own admission, the fuel-supply contracts provided an asset in the form of "long-term agreements with Fuel Centers and Travel Centers that required those entities to purchase their fuel from MEX[,]" and allowed MEX to "obtain a constant and reliable source of fuel to distribute and sell to its customers." Compl. ¶¶ 114–115. Further, MEX was lent hundreds of millions of dollars based on the value of these contracts according to the Lenders' consultant. *Id.* ¶¶ 294–297.

have "sufficient revenues to cover its ongoing expenses" or that its "existing revenue stream was insufficient to cover its expenses" will not suffice to replace a plain allegation of insolvency, notwithstanding the Trustee's willful ignorance of the value of MEX's fuel-supply contracts. Compl. ¶¶ 339–341.

Specifically, the Complaint also alleges that the Blue Owl Sale-Leaseback Transactions (where MEX profited) occurred from 2021 to 2023. *Id.* ¶ 127. But there are no factual allegations demonstrating insolvency during this period. So too, the Trustee fails to plausibly allege insolvency when the allegedly fraudulent Time & Water and AR Brinkley transfers occurred between 2020 and 2022. *Id.* ¶¶ 200–216, 236. The Trustee further asserts Wadud and Frady: "caused MEX to pay Adelphi Environmental at least $168,478.67 between March 17, 2022, and March 17, 2023," *id.* ¶ 195; "caused MEX to pay Adelphi Transport at least $763,447.91 between March 18, 2022, and March 17, 2023," *id.* ¶ 238(iii); and made fraudulent transfers to the "Related Entity Defendants" during the period "between March 18, 2019, and the Chapter 11 Petition Date (i.e., March 17, 2023)," *id.* ¶¶ 239–240. There are no allegations that MEX was insolvent on those transfer dates. Finally, as to the Trustee's allegations relating to purported 4Court Leasing Above Market Payments, there are no facts demonstrating when these transfers occurred. *See id.* ¶¶ 174–179, 189, 254–255. The Complaint clearly fails to satisfy the Trustee's burden to plead insolvency at the time of each of the transfers.

## 2.    *"Reasonably equivalent value"*

The Trustee also must plausibly allege, for each transfer, that MEX "received less than a reasonably equivalent value in exchange for such transfer or obligation." 11 U.S.C. § 548(a)(1)(B); O.C.G.A. § 18-2-74(a)(2). "[R]easonably equivalent value" means that "the debtor has received value that is substantially comparable to the worth of the transferred property." *BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 548 (1994). Reasonably equivalent value is analyzed under a three-part test: "(i) whether the debtor received value; (ii) whether the value received was in exchange for the property transferred; and (iii) whether the value was reasonably equivalent to the value of the property transferred." *In re GMI Grp., Inc.*, 606 B.R. 467, 495 (Bankr. N.D. Ga. 2019). At the pleading stage, this does not mean "dollar-for-dollar equivalence," but the Trustee "must have offered more than a bald assertion" that the value received was not reasonably equivalent in value to the price paid. *In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1344–45 (11th Cir. 2017).

A transfer that is part of a "single plan" must be viewed "as a whole, with all its composite implications, for reasonably equivalent value and otherwise." *In re Sabine Oil & Gas Corp.*, 547 B.R. 503, 540–41 (Bankr. S.D.N.Y.), *aff'd*, 562 B.R. 211 (S.D.N.Y. 2016) (holding that constructive fraudulent transfer claims were "not colorable" where creditor committee's theory applied a "selective" approach seeking to avoid only certain transactions in an "integrated event"). Because "a debtor

receives reasonably equivalent value if there is no negative net effect" on the estate, "interdependent transactions" should not be analyzed separately. *In re Flashcom, Inc.*, 647 F. App'x 689, 692–93 (9th Cir. 2016) (rejecting argument advanced by trustee that principal's stock buyback at a 15% discount could be avoided by segregating the transaction from the equity sale and repurchase that had a positive net effect on the debtor); *see also, e.g.*, *In re Phar-Mor, Inc. Sec. Litig.*, 185 B.R. 497, 501–04 (W.D. Pa. 1995) (reasoning that "the estate would be unjustly enriched" and would receive a "windfall at the expense of defendants" if permitted to recover transfers the company made to defendants as part of transaction with positive "net effect" for the debtor), *aff'd sub nom. Coopers & Lybrand v. Shapira*, 101 F.3d 689 (3d Cir. 1996).

The Complaint alleges several distinct "constructively fraudulent" transfers including the: LBO Bonuses, Improper Shareholder Payments, Sale-Leaseback Fee Transfers, 4Court Leasing Above Market Payments, Spartan Tank Transfers, Time & Water Transfers, AR Brinkley Transfers, One-Year Transfers, and Related Entity Transfers. Compl. ¶¶ 523, 535, 549. However, the Trustee does not seek to avoid the entirety of these tremendously valuable interdependent transactions—e.g., the loans made in connection with the LBO, *id.* ¶¶ 90–96; or the real estate acquisitions associated with the Sale-Leaseback Fee Transfers, the Time & Water Transfers, and AR Brinkley Transfers, *id.* ¶¶ 128, 219–234—which indisputably resulted in a net

positive profit for MEX and show that reasonably equivalent value was received. Instead, the Trustee seeks to unwind just one component of these interdependent transactions—e.g. certain "fees" paid to the Wadud-Frady Defendants—by excising them from the transactions at issue that were integral MEX's overall business plan. *Id.* ¶ 4. This "selective" approach to avoidance is fatal to the Trustee's claims, since the Court must "view the transaction as a whole to determine whether the Debtor received reasonably equivalent value." *In re All Am. Bottled Water Corp.*, No. 06-43133, 2009 WL 722994, at *5 (Bankr. W.D. Wash. Mar. 17, 2009), *aff'd*, 404 F. App'x 111 (9th Cir. 2010); *see also In re PSN USA, Inc.*, 615 F. App'x 925, 926 (11th Cir. 2015) (holding that "the fact the Debtor ultimately landed in bankruptcy does not preclude a finding that value was not given, even if the value increased the debtor's insolvency" because reasonably equivalent value must be assessed in light of all of the benefits, direct and indirect, that the debtor received including whether it "shared in the enjoyment of" or "use" of a service).

Even assuming the Trustee can selectively avoid only part of these integrated transactions while ignoring the direct and indirect benefits and profit that MEX received in exchange, the Complaint nevertheless fails to plausibly allege that "reasonably equivalent value" was not received for the segregated "fees" the Trustee seeks to avoid. For each, the Trustee relies on nothing more than legal conclusions that MEX received less or paid more than "market value" for the transfers. *See, e.g.*,

Compl. ¶ 524. Merely reciting the statutory language cannot satisfy the plausibility requirements. *See Menser*, 2021 WL 4484894, at *6 ("It is insufficient to simply allege the statutory elements of a constructive fraud claim.").

For instance, the Trustee makes several hopelessly vague allegations regarding payments that MEX made to entities co-owned by Wadud and Frady and their personal trusts. The Trustee alleges Wadud and Frady made transfers to their other companies "for no consideration, insufficient consideration, or without receiving reasonably equivalent value" and "transferred their interest" in certain companies "to their wholly owned trusts" even though the trusts did not "provide[] any services or value to MEX." Compl. ¶¶ 238–248. Such conclusory allegations, without specific detail regarding the who, what, when, where, and why of the transfers, does not meet the heightened pleading standards of Rule 9(b).

Notably, the Complaint alleges that MEX *did* receive a number of goods and services in exchange for each allegedly fraudulent transfer. For example, the Trustee's allegation that "MEX received no consideration for the LBO Bonuses" not only fails Rule 8's plausibly standard but is undermined by the Trustee's admissions that "after the LBO was completed, Frady and Wadud became co-Chief Executive Officers" and "were each responsible for overseeing and managing MEX's business and operations." *Id.* ¶¶ 97, 99–100. Indeed, Plaintiff acknowledges multiple times throughout the Complaint that Wadud and Frady received compensation "in the form

of dividends, distributions, salary, or bonuses." Compl. ¶¶ 101, 421, 424, 500. Once Wadud and Frady became co-owners, MEX did not pay them salaries. *Id.* ¶ 102 (showing no compensation/bonuses from 2021 onward). Under these facts, the LBO Bonuses could have been reasonable compensation for Wadud and Frady's employment with MEX, and the Complaint does not allege otherwise.

For another example, the Trustee alleges that MEX entered into agreements with Adelphi Environmental and Spartan Tank pursuant to which the entities agreed to provide MEX with environmental services. *Id.* ¶¶ 191, 196. The Trustee then alleges, on information and belief, that "some portion of those payments were payments that were above market rates and thus MEX did not receive reasonably equivalent value," and MEX transferred some Spartan Tank assets to Adelphi Environmental without "fair market value or reasonably equivalent value . . . ." *Id.* ¶¶ 195, 200. At the same time, however, the Trustee concedes that many of these transfers were in exchange for services performed as part of MEX's business operations, environmental site assessments, including site testing and monthly visual inspections. *Id.* ¶¶ 191, 197, 238 (alleging fraudulent transfers in connection with arrangements with entities, including Adelphi Transport Transfers, Golden Gallons, and Red Mountain Fuel Transport, to provide fuel hauling services). Despite devoting a substantial portion of the Complaint trying to twist these payments and others into purported fraud, the Trustee fails to allege they represent anything more

than ordinary operating expenses for services rendered.

Moreover, the Trustee makes several vague references to MEX paying "above market" prices for some goods and services; however, the Complaint contains nothing regarding the amount MEX allegedly overpaid. There is no direct allegation regarding value exchanged. *In re Fundamental*, 873 F.3d at 1344 (plaintiff "[was] required to allege facts demonstrating that the claims [defendant] received were not reasonably equivalent in value to the price he paid").

For example, the Trustee alleges Wadud and Frady entered into a series of Sale-Leaseback Transactions through which MEX would acquire a piece of real property, sell the property, and then immediately lease it back to operate a Fuel Center/Travel Center or sublease it to a third party. Compl. ¶¶ 121–122. The Trustee alleges Wadud's and Frady's other companies, including 4Court Consulting, InDepth, and Illuminous, received "substantial fees" from Sale-Leaseback Transactions "without MEX receiving any value, let alone reasonably equivalent value." *Id.* ¶¶ 150–153, 164, 166, 169. The Trustee argues that even if MEX received services in connection with Sale-Leaseback Transactions, the fees were nonetheless "in excess of fair market value for the purported services, and MEX did not receive reasonably equivalent value for the purported services either." *Id.* ¶ 169. Setting aside that the Trustee does not allege that the payments were made by MEX, there are no facts to support that the payments exceeded fair market value or by how much.

45

Formulaic recitations of the elements cannot satisfy the pleading standard.[18]

Consider, as another example, the Trustee's allegation that MEX fraudulently transferred its own property/assets/funds to or for the benefit of Time & Water, including the sale, assignment of contract rights, and rent payments made to Time & Water relating to numerous properties. Compl. ¶¶ 217–235. The Trustee states repeatedly that Wadud and Frady sold certain properties and assigned contract rights "for materially less" than "fair market value" (*see, e.g.*, *id.* ¶¶ 221–222, 229–230, 232, 235), but she never once explains what variables were used to determine what to sell the property for or what amounts to "fair market value." Plaintiff also alleges Defendants paid "above-market" rent but offers no facts demonstrating why the amounts paid were "above-market" or unreasonable. Similarly, the Trustee alleges transfers of property to or for the benefit of AR Brinkley, including "unwarranted profit received by AR Brinkley" associated with sales of real property, were fraudulent. *Id.* ¶ 237. However, the Trustee's conclusory allegation that this profit

---

[18] Similarly, the Trustee alleges MEX made fraudulent transfers to 4Court Leasing in connection with leases for fuel pumps and other equipment. Compl. ¶¶ 174–179. The Trustee alleges 4Court Leasing had been "charging MEX above market rents on dozens, if not hundreds, of properties" and "charging MEX a premium on its leases that was 'outside market.'" *Id.* ¶ 176. Absent from the Complaint, however, are any allegations to support the actual cost, the terms of the leases, and the value of the equipment that was crucial to MEX's operations. *See, e.g.*, *In re Blast Fitness Grp., LLC*, 602 B.R. 208, 220 (Bankr. D. Mass. 2019) (allegations of above-market lease payments were "conclusory" and "[did] not rise above the level of speculation for purposes of any fraudulent transfer count in the complaint" where plaintiff did not allege "why the lease should be considered above-market").

"constitutes transfers of MEX's property to or for the benefit of AR Brinkley not made in exchange for reasonably equivalent value" is plainly insufficient. *Id.*

At the very least, "plaintiff must present ***some*** information about the value the debtor received in exchange for the transfer." *Menser*, 2021 WL 4484894, at \*6 (emphasis added); *In re Fundamental*, 873 F.3d at 1344 (plaintiff "must have offered more than a bald assertion" that there was a higher "***potential*** value" than the debtor received) (emphasis added). The Complaint is lacks any information regarding the value exchanged in these transfers. Instead, the Trustee's claims rely entirely on bare-bones contentions that MEX received less than reasonably equivalent value. But "the trustee is not free to define the transfer that it seeks to avoid in any way it chooses." *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 381 (2018). Merely alleging that transfers were made for less than equivalent value does not make it so and certainly does not state a plausible claim for relief.

### B.    The "actual fraudulent" transfer claims fail.

To plead actual fraudulent transfers, the Trustee must allege that MEX made each transfer with "[w]ith ***actual intent*** to hinder, delay, or defraud" its creditors O.C.G.A. § 18-2-74(a)(1) (emphasis added). Further, "[t]o successfully plead a fraudulent transfer under section 548(a)(1)(A), a plaintiff must meet the heightened standards of Rule 9(b)." *In re Medici*, 524 B.R. 902, 905 (Bankr. N.D. Ga. 2014). The Trustee does not remotely plead her claims with the requisite particularity.

The UVTA enumerates eleven factors—called badges of fraud—that "aid courts in determining whether actual fraud exists." *Ralls Corp. v. Huerfano River Wind*, LLC, 27 F. Supp. 3d 1303, 1331 (N.D. Ga. 2014); O.C.G.A. § 18-2-74(b). The Trustee attempts to meet her burden to show MEX's fraudulent intent by reciting the "badges of fraud," but the Complaint does nothing more than regurgitate the statutory factors, adding the defendants' names, without explaining how each purported "badge" actually exists. Compl. ¶ 537(i)-(vii). For example, parroting badge ten (O.C.G.A. §§ 18-2-74(b)(10)), the Trustee says certain transfers "occurred shortly before or shortly after a substantial debt was incurred." Compl. ¶ 537(vii). This non-sensical allegation says nothing of substance (e.g., what debt, when it was incurred relative to any transfer, or how it has any connection to the transfer).

Even then, many of the Trustee's "badge" allegations fail to track the statutory language. For example, badge two says "[t]he debtor retained possession or control of the property transferred after the transfer." O.C.G.A. § 18-2-74(b)(2). Garbling the statute, the Complaint asserts that "Frady Husain, and Wadud"—the purported transferees, not the debtor—"retained possession or control of the [transferred] funds." Compl. ¶ 537(ii). How a transferee's possession of transferred property could suggest fraud is left unsaid by the Trustee. These error-riddled and boilerplate allegations cannot support claims for actual fraudulent transfers.

48

**C.    Claims based on transfers before March 2019 are time-barred.**

A bankruptcy trustee may avoid only transfers made within four years of the filing of the debtor's bankruptcy case. *In re Webster*, 629 B.R. 654, 671 (Bankr. N.D. Ga. 2021) (citing O.C.G.A. § 18-2-79(1)).[19] A transfer can no longer be avoided once the four-year period ends. *Barnes v. Tillery*, 907 S.E.2d 914, 916 (Ga. Ct. App. 2024), *cert. denied* (Ga. 2025). Dismissal on statute of limitations grounds is proper "if it is apparent from the face of the complaint that the claim is time-barred" and "it appears beyond a doubt that [a plaintiff] can prove no set of facts that toll the statute." *Sec'y of Labor v. Labbe*, 319 F. App'x 761, 764 (11th Cir. 2008).

MEX filed bankruptcy on March 18, 2023. Compl. ¶ 1. Thus, transfers made before March 18, 2019, are not subject to avoidance, including the LBO Bonuses and any fees paid as part of Sale-Leaseback Transactions prior to March 2019.

The Trustee hopes to evade this straightforward application of the statutory time bar by invoking "equitable tolling." Compl. ¶¶ 526–527. However, equitable tolling requires a showing of "extraordinary circumstances" such as fraud, deliberate concealment, or misrepresentation. *Jackson v. Astrue*, 506 F.3d 1349, 1356 (11th Cir. 2007). The Trustee's bald legal conclusions that the statute of limitations simply "can be extended through" or "is subject to" equitable tolling are insufficient to

---

[19] The UVTA's statute of limitations under O.C.G.A. § 18-2-79(1) is four years from the date of a transfer, but 11 U.S.C. § 546(a) allows a trustee up to two years to bring UVTA claims that were not time-barred at the time of the bankruptcy filing.

satisfy these requirements. *In re Butler Logging, Inc.*, 538 B.R. 174, 178 (Bankr. S.D. Ga. 2015) ("Congress could have enacted a different [limitations period] in order to protect the rights of a chapter 7 trustee . . . . It elected not to do so.").

**D.    Fraudulent transfer claims not based on transfers by MEX fail.**

The Trustee has not alleged that each transfer at issue was a transfer by MEX of its own property, as opposed to transfers by another or of another's property. *See generally* O.C.G.A. §§ 18-2-74, -75 (referring only to transfers made or obligations incurred "by a debtor"); *see also Crystallex Int'l Corp. v. Petroleos de Venez., S.A.*, 879 F.3d 79, 85 (3d Cir. 2018) (holding transfers by non-debtors "lack the principal harm visited upon creditors in a fraudulent transfer, namely the debtor's alienation of an asset otherwise available to pay its debts"). To the contrary, the Trustee alleges that many transfers were made by a party other than MEX.

For example, the Trustee alleges that Wadud and Frady "siphoned millions of dollars from MEX through the payment of purported 'fees' to entities they own in connection with the Sale-Leaseback transactions." Compl. ¶ 140; *see also id.* ¶ 150 (alleging "Frady and Wadud caused substantial fees to be paid to their own companies at the closing of Sale-Leaseback Transactions and Fuel Supply Agreements" but not explaining who paid the fees). The Complaint does not allege that MEX was the party paying those fees—because any fees paid in connection with the Sale-Leaseback Transactions were paid by the third-party buyers, not MEX. To

be sure, the Trustee alleges the sale proceeds would have gone to MEX at closing. *See* Compl. ¶¶ 353–354. But nowhere in the Trustee's Complaint does she allege that MEX had a legal interest in the funds, let alone that it transferred them. Thus, because the Trustee cannot avoid any transfers made by third parties to Defendants, her claims must be dismissed. *In re NewStarcom Holdings Inc.*, 816 F. App'x 675, 678 (3d Cir. 2020) ("transfers of non-debtor property" are not avoidable).

Similarly, the Trustee alleges payments made to Wadud and Frady as part of the LBO, including stockholder distributions and bonuses, were fraudulent transfers. Compl. ¶¶ 92, 101–102. The Trustee fails to plausibly allege that MEX was the source of those payments because any payments Wadud and Frady received in connection with the LBO were necessarily approved and distributed by the Lenders in connection with the closing with knowledge of MEX's finances (presumably on the advice of the Trustee's own counsel).[20]

### E.    The preference claims fail.

To state a preference claim, the Trustee must allege, among other things, that MEX transferred its property: "to or for the benefit of a creditor"; "for or on account of an antecedent debt owed by the debtor before such transfer was made"; and either

---

[20] These transfers are also protected under the safe harbor of 11 U.S.C. § 546(e) because a "trustee may not avoid a transfer . . . that is a settlement payment made by or to . . . a financial institution [First Horizon Bank] [or] financial participant . . . in connection with a securities contract [Wadud's and Frady's shares in MEX]."

"within 90 days" of MEX's bankruptcy filing or, if the recipient-creditor was an "insider," within one year. 11 U.S.C. § 574(b). The Trustee fails to plead these.

*First*, the Trustee has not articulated the basis for preference claims, which are pleaded in the Trustee's disorganized shotgun fashion and should be dismissed on that ground alone. The preferences the Trustee seeks to avoid are the so-called "One-Year Transfers" listed in Exhibit B to the Complaint. Compl. ¶¶ 255, 562, 574. Exhibit B is a fifteen-page list of nothing but "Insider's Names" (presumably the recipients), "Dates," and "Transfer Amounts"—nothing else. By grouping these transfers together without providing specific details as to any of them—such as the timing or parties involved in each transfer—the Trustee has made it exceedingly difficult to determine which transfers are intended to support her preference claims.

*Second*, the Complaint does not contain any allegations to show that any of the alleged transfer recipients was a "creditor" of MEX or that the payments were for an "antecedent debt" that MEX owed. Indeed, almost the entirety of the Complaint is dedicated to arguing the opposite: that Wadud and Frady (and their affiliated entities) misappropriated MEX's money and were not entitled to any payments from the company. *See, e.g.*, Compl. ¶¶ 172, 186, 351, 396–397.

*Third*, based on Exhibit B, the Trustee purports to avoid transfers made to the so-called "Related Entity Defendants" (Wadud's and Frady's entities) more than 90 days before the bankruptcy filing (i.e., before December 18, 2022). But the Trustee

fails to plead sufficient facts that the Related Entity Defendants are "insiders" as defined in 11 U.S.C. § 101(31) (providing six categories corporate insiders, none of which include the Related Entity Defendants). To the contrary, the Trustee simply offers the threadbare allegation that "[t]he One-Year Transfers were made within the one (1) year preceding the Petition Date to insiders." Without facts to support such a conclusory allegation, the Trustee's claim that the transfers were made to insiders is insufficient. *In re Licking River Mining, LLC*, 571 B.R. 241, 255 (Bankr. E.D. Ky. 2017) (dismissing complaint that "does not state more than mere conclusions and does not provide an adequate factual basis to create a plausible inference that Monday is an insider").[21] Thus, the Trustee's "preference" claims against the Related Entity Defendants for transfers outside the 90-day period fail.[22]

### F.    The Trustee's direct claims against the Waduds fail.

In Counts 17, 18 & 19, the Trustee attempts to assert avoidance claims not on behalf of MEX's creditors, but on her own behalf, related to the Waduds' transfers of two properties. Compl. ¶¶ 611–641. The Complaint alleges that "[t]he Trustee is a creditor of Wadud and was a creditor of Wadud at the time" the deeds transferring

---

[21] The Trustee acknowledges as much. Compl. ¶ 572 n.28 (limiting claim to 90 days "[t]o the extent that any of the Related Entity Defendants do not constitute insiders").

[22] The Trustee also fails to plead that MEX was insolvent on the date of each transfer during the time period between 91 days and one year before MEX's bankruptcy. MEX is not presumed to be insolvent during that period. *See* 11 U.S.C. § 547(f) (insolvency presumption applies only in 90 days pre-bankruptcy).

the property were recorded. *Id.* ¶¶ 613, 622, 632. The Trustee's theory appears to be that she is a creditor of the Waduds by virtue of the other claims she asserts in the Complaint. This theory is flawed for several reasons.

*First*, because this claim is predicated on the Trustee ultimately becoming a "judgment creditor" of the Waduds through this lawsuit, that claim necessarily fails insofar as all her other claims against the Waduds fail, as outlined above.

*Second*, initiating a lawsuit to pursue fraudulent transfer claims does not automatically confer creditor standing to the Trustee. Under 11 U.S.C. § 544(a) and (b), a trustee is empowered to step into the shoes of creditors to avoid fraudulent transfers made by the debtor. This provision permits the trustee to assert avoidance claims on behalf of creditors for the benefit of the bankruptcy estate. *In re Fabian*, 458 B.R. 235, 256 (Bankr. D. Md. 2011) (trustee has "authority of a conservator to gather in the assets of the bankruptcy estate that were improperly disbursed prepetition."), *aff'd*, 475 B.R. 463 (D. Md. 2012), *aff'd*, 491 F. App'x 420 (4th Cir. 2012). It does not mean, however, that the Trustee becomes a judgment creditor merely by asserting such claims. For the theory to be plausible, the Trustee's underlying claims would need to first succeed. But success is far from guaranteed, and creditor standing cannot rest on a speculative or hypothetical right to payment.

*Finally*, even setting aside these deficiencies, Counts 17, 18 & 19 fail to plausibly allege claims in their own right. The Trustee offers only conclusory

allegations of the Waduds' insolvency or fraudulent intent, which are insufficient to state a plausible claim for relief.

### G.     The "civil conspiracy to violate the UVTA" claim fails.

In Count 6, the Trustee alleges that the "RICO Defendants" are liable for "conspiracy to violate" Georgia's UVTA.[23] Compl. ¶ 476. As an initial matter, this claim fails because, as shown above, the Trustee has not pleaded a viable UVTA claim. If the "underlying cause of action is not viable, the conspiracy claim must also fail." *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1199 (11th Cir. 2004); *Miller v. Lomax,* 596 S.E.2d 232, 242 (Ga. Ct. App. 2004).

Even if the Trustee had pleaded a UVTA claim, she would lack standing to assert her "conspiracy to violate" claim. The Complaint cites *Chepstow Ltd. v. Hunt*, 381 F.3d 1077 (11th Cir. 2004), as the basis for the conspiracy claim. In that case, the Eleventh Circuit held that Georgia law allows a ***creditor*** to assert a tort claim for conspiracy to violate (the predecessor to) the UVTA against non-recipients of a fraudulent transfer. The Trustee is the successor to MEX, not a creditor. A "bankruptcy trustee does not have standing to assert claims of creditors of the bankrupt." *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 985 (11th Cir. 1990).

The only exception to that rule is the one in 11 U.S.C. § 544, discussed above,

---

[23] The Complaint erroneously refers to the UVTA by its old, pre-2015 name, the "Uniform Fraudulent Transfers [sic] Act." Compl. ¶ 476.

which assigns a creditor's avoidance claims to the debtor (or trustee). The language of that statutory assignment, however, is specific and narrow. It provides "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a [certain type of] creditor . . . ." 11 U.S.C. § 544(b). The assignment thus extends solely to a creditor's ability to "avoid" transfers—not to tort claims related to such transfers.[24] The Trustee thus lacks standing to pursue MEX's creditors' "conspiracy" claims.

Even if the Trustee could pursue creditors' conspiracy claims, the allegations would fail to state a claim. The Complaint states that the "allegations underlying the Trustee's tort and RICO claims" and the RICO Defendants' "fraudulent transfers" serve as the basis for a civil conspiracy claim. Compl. ¶¶ 476–478. The Trustee must thus plead this tort with particularity. *Wyndham Vacation Ownership, Inc. v. US Consumer Att'ys, P.A.*, No. 18-cv-81251, 2019 WL 7837887, at *4 (S.D. Fla. July 3, 2019) (requiring heightened pleading under Rule 9(b) for civil conspiracy claim premised on "paradigmatic allegations of fraud"). But there are no dates, times, or particular details alleged as to which "RICO Defendants" were "joined together to accomplish unlawful ends" or how they did so. Compl. ¶ 475. There is no description

---

[24] The debtor's ability to recover funds from avoided transfers is provided for separately in the Bankruptcy Code, 11 U.S.C. § 550, because Section 544—limited solely to the avoidance itself—does not purport assign the UVTA's recovery provision (O.C.G.A. § 18-2-77) to the debtor.

whatsoever of a plan or scheme supposedly devised to defraud MEX. Vague assertions that the "RICO Defendants" generally "engaged in conduct" that violates the UVTA does not suffice to show an agreement or a common plan. Compl. ¶ 476; *Bolinger v. First Multiple Listing Serv., Inc.*, 838 F. Supp. 2d 1340, 1368 (N.D. Ga. 2012) ("Absent an agreement, there can be no conspiracy."). The Trustee's attempt to incorporate the deficient avoidance-claim allegations "as set forth in Counts [9] through [16] below" does not remedy this problem. Compl. ¶ 476. The Complaint accordingly fails to state a claim for conspiracy. *Wells Fargo Bank v. Crowly*, No. 1:13-CV-1427, 2014 WL 11370437, at *8 (N.D. Ga. Feb. 20, 2014) (dismissal is proper "if insufficient factual allegations are made with regard to either (1) the underlying tort or (2) the agreement between conspirators (in furtherance of the tort or unlawful act) constituting the conspiracy"); *Bragg v. Bank of Am., N.A.*, No. 1:14-cv-546, 2014 WL 2154190, at *4 (N.D. Ga. May 21, 2014) ("conclusory assertion that Defendants engaged in a 'conspiracy to defraud the Plaintiff'" required dismissal of claim).

## V.   THE TRUSTEE'S "ALTER EGO" CLAIMS FAIL.

Count 21 seeks a declaratory judgment that Illuminous and InDepth are the "alter egos" of Wadud or Frady, respectively. This claim must be dismissed.

*First*, the Trustee lacks standing to bring an alter ego claim against Illuminous and InDepth. The Trustee seeks alter ego declarations—not on behalf of MEX—but

rather on behalf of creditors of Wadud and Frady, which she has no standing to pursue.[25] *See Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 292 (2005) (trustee only has standing to bring alter ego claims of the corporate debtor "against its principals" in limited circumstances); *see also In re Mattress N More, Inc.*, 231 B.R. 104, 109 (Bankr. N.D. Ga. 1998) ("[T]he Court is not persuaded that a trustee can destroy the corporate fiction to make shareholders and related entities liable for all the debtor's debts and the trustee's administrative expenses."). *Second*, Georgia law does not recognize a theory that a corporation can be the alter ego of an individual shareholder.[26] *Acree v. McMahan*, 585 S.E.2d 873, 874 (Ga. 2003) ("We reject reverse piercing, at least to the extent that it would allow an 'outsider,' such as a third-party creditor, to pierce the veil in order to reach a corporation's assets to satisfy claims against an individual corporate insider."). *Finally*, even if she had standing to bring a declaratory judgment claim for alter ego on behalf of creditors of

---

[25] The Trustee cannot obtain an alter ego declaratory judgment against InDepth or Illuminous (both Georgia limited liability companies) because alter ego claims are not properly decided under Georgia's declaratory judgment act. *Travelers Prop. Cas. Co. of Am. v. Clucis*, No. 1:20-CV-276, 2022 WL 4773493, at *8 (N.D. Ga. Sept. 30, 2022) ("the alter ego question should ordinarily be decided by a jury").

[26] "Even in a case of alleged fraud, shareholders cannot be held accountable for the fraudulent acts of the underlying corporation" because "the corporate entity may be disregarded only in exceptional circumstances." *EnduraCare Therapy Mgmt., Inc. v. Dra*ke, 298 681 S.E.2d 168, 171 (Ga. Ct. App. 2009) (internal quotations and citations omitted). Indeed, "great caution should be exercised when disregarding the corporate entity." *Najran Co. for Gen. Contracting & Trading v. Fleetwood Enters., Inc.*, 659 F. Supp. 1081, 1096 (S.D. Ga. 1986).

Wadud or Frady (she does not), an alter ego claim cannot proceed unless the Trustee has an inadequate remedy at law. *Baillie Lumber Co.*, 279 Ga. at 290. The Trustee has an adequate remedy at law (i.e., damages), and cannot maintain an alter ego claim against Illuminous or InDepth.[27]

In Count 22, the Trustee asserts alter ego claims against the 4Court Entities, but like Count 21, she lacks standing to do so. Count 22 also fails because the Trustee does not specify what state's law applies.[28] Regardless, Count 22 should be dismissed. Delaware law disregards the corporate form only in "exceptional circumstances," *Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 392 (D. Del. 2012), and a plaintiff bringing an alter ego claim must plead and prove "(1) that the companies 'operated as a single economic entity' and (2) that an 'overall element of injustice or unfairness . . . [is] present." *In re Moll Indus., Inc.*, 454 B.R. 574, 587 (Bankr. D. Del. 2011) (citations omitted)). Tennessee law is in accord. *Youree v. Recovery House of E. Tenn., LLC*, 705 S.W.3d 193, 213 (Tenn. 2025) (refusing to pierce the corporate veil where plaintiff's complaint did not contain any allegations that "control [of the judgment debtor] was used to commit fraud, wrong, or injustice" or that "fraud, wrong, or injustice caused the Plaintiff's injury"); *Church Joint*

---

[27] The Trustee seeks a declaration "for purposes of, among other things, obtaining the relief sought through this Complaint," including damages. Compl. ¶¶ 650–651.

[28] The 4Court Entities are organized under the laws of Delaware and Tennessee. Compl. ¶¶ 36, 41, 43, 45, 47.

*Venture, L.P. v. Blasingame*, 947 F.3d 925, 931 (6th Cir. 2020) ("Even normal piercing of the corporate veil is a tool courts employ only in limited circumstances. Piercing the corporate veil in reverse—that is, holding an entity liable for the debts or obligations of its owner—is much less common and much more controversial."). Moreover, the Trustee has adequate remedies at law, depriving her of the ability to assert alter ego claims. *Beckrich Holdings, LLC v. Bishop & Quint*, No. 18116, 2001 WL 167732, at *1 (Del. Ch. Feb. 15, 2001) (explaining that the absence of a legal remedy must be specifically pleaded to obtain an equitable remedy). Thus, the Trustee's pleading deficiencies require dismissal of Count 22.

## CONCLUSION

For the reasons stated above and incorporated by reference from the other defendants' motions to dismiss, the Court should dismiss the Trustee's claims against the Wadud-Frady Defendants.

Respectfully submitted this 30th day of May 2025.

*/s/ Thaddeus D. Wilson*
Thaddeus D. Wilson (Ga. Bar No. 596008)
B. Warren Pope (Ga. Bar No. 583723)
Kevin J. O'Brien (Ga. Bar No. 714849)
Allexia Bowman Roberts (Ga. Bar No. 554115)
E. Hope Garrison (Ga. Bar No. 246487)
**KING & SPALDING LLP**
1180 Peachtree Street NE, Suite 1600
Atlanta, Georgia 30309-3521
Phone: (404) 572-4600
thadwilson@kslaw.com
wpope@kslaw.com

kobrien@kslaw.com
aroberts@kslaw.com
hgarrison@kslaw.com

*Counsel for the Wadud-Frady Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by L.R. 5.1B. This Memorandum was prepared on a computer using the Times New Roman font (14 point).


*/s/ Thaddeus D. Wilson*
Thaddeus D. Wilson (Ga. Bar No. 596008)

<u>**CERTIFICATE OF SERVICE**</u>

I, Thaddeus D. Wilson, attorney for the Wadud-Frady Defendants herein, certify that on May 30, 2025, a copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF THE WADUD-FRADY DEFENDANTS' MOTION TO DISMISS** was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing systems to all counsel of record.

*/s/ Thaddeus D. Wilson*
Thaddeus D. Wilson

# APPENDIX

| Cause of Action | Wadud-Frady Defendants | Basis for Dismissal |
|---|---|---|
| **One**<br>Breach of Fiduciary Duty | Wadud, Frady | Exculpation, Business Judgment Rule, Failure to State a Claim, Statute of Limitations, Rule 9(b) |
| **Two**<br>Aiding and Abetting Breach of Fiduciary Duty | 4Court Holdings, 4Court Consulting, 4Court Leasing, Time & Water, Illuminous, InDepth, A/R Brinkley, Rita Frady, Habiba Wadud | Underlying Tort Claim Fails, Failure to State a Claim, Statute of Limitations, Rule 9(b) |
| **Three**<br>Conversion | Frady, Wadud, InDepth, Illuminous, 4Court Consulting, 4Court Leasing | Failure to State a Claim, Statute of Limitations |
| **Four**<br>Money Had and Money Received | Frady, Wadud, InDepth, Illuminous, 4Court Consulting, 4Court Leasing | Duplicative Claim, Failure to State a Claim, Statute of Limitations |
| **Five**<br>Georgia Civil RICO | "RICO Defendants" | Failure to Plead an Enterprise or any Predicate Acts, Statute of Limitations, Rule 9(b) |
| **Six**<br>Conspiracy | "RICO Defendants" | Underlying Tort & Statutory Claims Fail, Statute of Limitations, Rule 9(b) |
| **Seven**<br>Unjust Enrichment | Frady, Wadud, InDepth, Illuminous, 4Court Holdings, 4Court Consulting | Statute of Limitations, Failure to State a Claim |
| **Eight**<br>Breach of Statutory Duties | Frady, Wadud | Exculpation, Business Judgment Rule, Failure to State a Claim, Statute of Limitations, Rule 9(b) |
| **Nine**<br>Avoidable Fraudulent Transfers Under § 544 & O.C.G.A. § 18-2-75(a)) | Frady, Wadud, "Related Entity Defendants" | Failure to State a Claim, Statute of Limitations |

| Cause of Action | Wadud-Frady Defendants | Basis for Dismissal |
|---|---|---|
| **Ten**<br>Avoidable Transfers Under § 544(b) & O.C.G.A. § 18-2-74(a)(1) | Frady, Wadud, "Related Entity Defendants" | Failure to State a Claim, Statute of Limitations |
| **Eleven**<br>Voidable Transfers Under § 544(b) & O.C.G.A. § 18-2-74(a)(2) | Frady, Wadud, "Related Entity Defendants" | Failure to State a Claim, Statute of Limitations |
| **Twelve**<br>Avoidance of Preferential Transfers Under § 544 & O.C.G.A. § 18-2-75(b) | Frady, Wadud, "Related Entity Defendants" | Failure to State a Claim, Related Entities Not Insiders |
| **Thirteen**<br>Avoidance of Preferential Transfers Under § 547 | Frady, Wadud, "Related Entity Defendants" | Failure to State a Claim, Related Entities Not Insiders |
| **Fourteen**<br>Avoidable Transfers Under § 548 | Frady, Wadud, InDepth, Illuminous, 4Court Consulting, 4Court Leasing | Failure to State a Claim, Statute of Limitations |
| **Fifteen**<br>Avoidable Transfers Under § 548 | Frady, Wadud, InDepth, Illuminous, 4Court Consulting, 4Court Leasing | Failure to State a Claim, Statute of Limitations, Rule 9(b) |
| **Sixteen**<br>Recovery of Transfers Under § 550 | Frady, Wadud, InDepth, Illuminous, 4Court Leasing, 4Court Consulting, the 317 Trustee, R. Frady, the LFK Trustee, "Related Entity Defendants" | Underlying Avoidance Action Fails |
| **Seventeen**<br>Avoidable Transfers O.C.G.A. § 18-2-74(a)(1) | Wadud, Habiba, the Bayt Trustee | Failure to State a Claim |

Appendix - 2

| Cause of Action | Wadud-Frady Defendants | Basis for Dismissal |
|---|---|---|
| **Eighteen**<br>Voidable Transfers as to Present or Future Creditors<br>O.C.G.A. § 18-2-74(a)(2) | Wadud, Habiba, the Bayt Trustee | Failure to State a Claim |
| **Nineteen**<br>Avoidable Fraudulent Transfers<br>O.C.G.A. § 18-2-75(a) | Wadud, Habiba, the Bayt Trustee | Failure to State a Claim |
| **Twenty**<br>Preservation of Avoided Transfers<br>Under § 551 | Frady, Wadud, InDepth, Illuminous, 4Court Leasing, 4Court Consulting, the 317 Trustee, R. Frady, the LFK Trustee, "Related Entity Defendants" | Underlying Avoidance Action Fails |
| **Twenty-One**<br>Declaratory Judgment for Alter Ego/Piercing the Corporate Veil | Frady, Wadud, InDepth, Illuminous | Failure to State a Claim, Lack of Standing |
| **Twenty-Two**<br>Declaratory Judgment for Alter Ego/Piercing the Corporate Veil | 4Court Holdings, 4Court Consulting, 4Court Leasing | Failure to State a Claim, Lack of Standing |